COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bray and Annunziata
Argued at Alexandria, Virginia


VICTOR VSAY HUCKS

                                          OPINION BY
v.    Record No. 0983-99-4      JUDGE ROSEMARIE ANNUNZIATA
                                        AUGUST 1, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        Joanne F. Alper, Judge

          Mark S. Thrash for appellant.

          Leah A. Darron, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Victor Hucks was convicted by a jury in the Circuit Court

of Arlington County of breaking and entering with intent to

commit larceny, in violation of Code § 18.2-91.  On appeal,

Hucks contends the trial court erred 1) in giving a jury

instruction offered by the Commonwealth to which he objected;

and 2) in denying his motion to strike the Commonwealth's

evidence for failure to prove intent to commit larceny.  For the

reasons that follow, we affirm the conviction.

                            FACTS

     On appeal, we "examine the evidence and all inferences

reasonably deducible therefrom in the light most favorable to

the Commonwealth, the prevailing party in the trial court."

<u>Taylor v. Commonwealth</u>, 31 Va. App. 54, 64, 521 S.E.2d 293, 298 (1999) (<u>en</u> <u>banc</u>) (quoting <u>Commonwealth v. Jenkins</u>, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998)).  On July 3, 1997, bookkeeper Donna Sarber arrived at her office in the Arlington law firm of Walsh, Colucci, and Stackhouse between 5:00 a.m. and 5:30 a.m. Sarber used her security key to gain access to the elevator and rode the elevator to the firm's office suite on the thirteenth floor of the building.  She entered the suite through the kitchen door and deactivated the suite's security system.  The suite's exterior doors are designed to close and lock automatically upon being shut, and the main entrance to the suite remains locked until the receptionist arrives at 8:30 a.m. After entering the suite, Sarber went to her office and began working.

Attorney Shawn McMullen arrived at the firm at approximately 6:00 a.m.  McMullen also entered the suite by unlocking the kitchen door, because that is the only entrance through which one may enter and deactivate the alarm system. McMullen noted the alarm system had been deactivated, indicating that someone had already entered the suite.  He was aware Sarber routinely arrived at work early.  McMullen walked through the suite to the reception area and observed that the main doors were closed.  He noticed Sarber's office light and radio were on.  He proceeded to his office and shut the door.

Within five to ten minutes of McMullen's arrival, Hucks opened McMullen's office door.  McMullen was surprised to see a stranger in the office at that early hour.  Hucks asked if there was someone named Denise in the office.  McMullen replied that he knew no one by that name, and Hucks apologized for the interruption and shut the door.  Hucks reopened the door and told McMullen that he appeared to be "in a trinity of thought," and shut the door again.  McMullen was concerned about the presence of the stranger in the office and decided to walk to Sarber's office to see if she was alright.  As he walked to her office, he heard the suite's exit door slam shut.  When he arrived at Sarber's office, he found her on the telephone, reporting the intruder to the police.  Sarber had also seen Hucks as he walked past an interior window that opened onto the hallway outside her office.

McMullen and Sarber walked through the office suite and determined that all the doors through which the suite could be entered were locked and secured.  They noticed that the door to the room containing the office's telephone equipment, located just across the hall from McMullen's office, was ajar.  The door was closed when McMullen arrived at work that morning.

Officer Justin McNaul responded to Sarber's report of a possible burglary in progress and, based upon her description of the intruder, stopped Hucks as he was leaving the office

- 3 -

building.  Hucks admitted that he had been inside the Walsh, Colucci office suite.  Officer McNaul conducted a pat-down to check Hucks for weapons and discovered an eight-inch slotted screwdriver tucked into his waistband.  Hucks became agitated and clenched his fists, backing away from McNaul.  McNaul, aided by another police officer, placed Hucks in handcuffs.  Sarber and McMullen then came outside and identified him as the individual they had encountered in the office.  Hucks was searched further, and a latex glove was found in his vest pocket.  Hucks' car was subsequently searched, and the police discovered several screwdrivers with bent or altered tips and a kitchen knife also with a bent tip.

An investigation of the office suite revealed no evidence of forced entry.  No usable fingerprints were recovered.  However, the police determined the front door to the office suite had a locking mechanism that easily could be "jimmied" with a flat-edged instrument, without leaving any pry marks.

At the conclusion of his trial, Hucks argued that, although the evidence was sufficient to prove intent to break and enter, it was not sufficient to prove intent to commit larceny.  He argued that in order to permit an inference of intent to commit larceny, the evidence had to show that a breaking and entering had occurred at night.  The court decided, however, that in cases dealing with breaking and entering of business premises,

"nighttime" means any time outside normal business hours.  On that ground, the court held the Commonwealth had presented a prima facie case of breaking and entering with intent to commit larceny.

Hucks subsequently objected to the Commonwealth's proposed jury instruction 8, which stated:

> In the absence of evidence showing a
> contrary intent, you may infer that a
> defendant's unauthorized presence in a
> building of another was with the intent to
> commit larceny.

Hucks contended that the instruction did not correctly state the law, because it omitted the words "in the nighttime."  The court overruled Hucks' objection, concluding that under Code §§ 18.2-90 and 18.2-91, "in the nighttime" means any time outside normal business hours.  The jury found Hucks guilty of breaking and entering with intent to commit larceny.

### COMMONWEALTH'S CHALLENGED JURY INSTRUCTION

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  "[A] jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.'"  Id.

- 5 -

(quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)).  "Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced."  Stewart v. Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 514 (1990) (citation omitted).

Code § 18.2-91 provides, in pertinent part, that if any person breaks and enters an office in the daytime, or enters without breaking in the nighttime, "with intent to commit larceny . . . he shall be guilty of statutory burglary . . . ."[1] A "breaking" within the meaning of the statutes may be actual or constructive.  See Johnson v. Commonwealth, 221 Va. 872, 876, 275 S.E.2d 592, 594 (1981).  Whenever a statute establishes an offense comprised of an act combined with a particular intent, "proof of such intent is as necessary as proof of the act itself and must be established as a matter of fact."  Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979) (citing Patterson v. Commonwealth, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975)) (additional citation omitted).  "Intent is the purpose formed in a person's mind which may, and often must, be

_____

[1] Code § 18.2-91 incorporates by reference all those aspects of Code § 18.2-90 except the crimes of murder, robbery, rape or arson.

inferred from the facts and circumstances in a particular case. The state of mind of the offender may be shown by his acts and conduct."  Id. (citing Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)) (additional citation omitted). In a prosecution for statutory burglary with intent to commit larceny, the Commonwealth must prove the accused's specific intent to commit larceny beyond a reasonable doubt, although it may, and often must, prove such intent by circumstantial evidence.  See id.

"[A]n unlawful entry into [the] dwelling of another [gives rise to a] presumption . . . that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances."  Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971).  This principle applies equally to business premises.  See Ridley, 219 Va. at 836, 252 S.E.2d at 314.  "In the absence of evidence showing a contrary intent, the trier of fact may infer that a person's unauthorized presence in another's house was with the intent to commit larceny." Sandoval v. Commonwealth, 20 Va. App. 133, 137, 455 S.E.2d 730, 732 (1995) (citing Ridley, 219 Va. at 837, 252 S.E.2d at 315).

Although we find no basis in the law to support the view that any time outside normal business hours may be equated with "nighttime," we hold the Commonwealth's challenged jury

instruction appropriately stated the law. "[A]n appellate court may affirm the judgment of a trial court when it has reached the 'right result for the wrong reason.'" Bynum v. Commonwealth, 28 Va. App. 451, 458, 506 S.E.2d 30, 34 (1998) (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 451, 417 S.E.2d 312, 313 (1992)). In Sandoval, we held that, in the absence of evidence to the contrary, the trier of fact was entitled to infer the defendant's intent to commit larceny from his unauthorized presence in another's dwelling, irrespective of the time of day. We cited Ridley in support of our decision. Hucks correctly argues that in Ridley, in which this inference was first enunciated, the Supreme Court stated the fact finder was entitled to infer larcenous intent based upon the defendant's unauthorized presence in a storehouse "in the nighttime." The Court incorporated that phrase into its statement of the inference because the record before it revealed the defendant to have been present in the storehouse at 9:30 p.m. However, the gravamen of the analysis was not the time at which the unlawful entry occurred but whether, upon consideration of the facts and circumstances of the case, the defendant's unlawful presence could be deemed sufficient to infer an intent to commit larceny. In extending the inference of intent to commit larceny to business premises, the Court, viewing "the surrounding facts and circumstances" of the case before it, held that the jury was

- 8 -

entitled to draw such an inference from Ridley's unauthorized presence in the storehouse at night. The Court did not specifically limit the inference to situations in which the defendant's unauthorized presence on another's premises occurs at night.

In Jones v. Commonwealth, 3 Va. App. 295, 349 S.E.2d 414 (1986), we followed Tompkins and Ridley in holding that an unlawful entry upon another's business premises allows a presumption that the entry was made for an unlawful purpose, and "the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances." Id. at 299, 349 S.E.2d at 417 (citing Tompkins, 212 Va. at 461, 184 S.E.2d at 768). There, we stated that the defendant's entry of a retail store during normal business hours, and his act of concealing himself within the store until it closed, constituted a constructive breaking and entering and provided "surrounding facts and circumstances" sufficient to permit the fact finder to infer his specific intent to commit larceny. See id. at 300, 349 S.E.2d at 417.

Here, the surrounding facts and circumstances of the case support the conclusion that Hucks entered the office suite unlawfully. He was found in the premises over two hours before the beginning of normal business hours, while the doors to the suite were all shut and locked. He possessed an altered

screwdriver and a latex glove.  These items provide grounds to infer forced entry, particularly given the evidence that the doors to the office suite lock automatically upon being shut and that the main door was of a type that could easily be "jimmied" without leaving any pry marks.  This evidence permitted the fact finder to infer Hucks entered for an unlawful purpose and to infer his specific intent to commit larceny.  See id.  Thus, the trial court's instruction of the jury was supported by the analyses of Ridley, Sandoval, and Jones, and we affirm on that basis.

## SUFFICIENCY OF THE EVIDENCE

"'When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom.  The jury's verdict will not be disturbed unless plainly wrong or without evidence to support it.'"  Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)).  We find no merit in Hucks' contention that the evidence adduced at trial was insufficient to support the jury's conclusion that he intended to commit larceny.  As noted, Hucks' unauthorized presence in the office suite before normal business hours permitted an inference that

he intended to commit larceny.  See Ridley, 219 Va. at 837, 252 S.E.2d at 314; Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. In addition to his unauthorized presence, the evidence proved Hucks possessed a screwdriver whose tip was altered sufficiently to serve as a burglary tool, and a latex glove that would prevent his fingerprints from being detected on a door he might manipulate for entry.  Officer McNaul testified that several additional altered screwdrivers were found in Hucks' car. Viewing the evidence in the light most favorable to the Commonwealth, we cannot say the jury plainly erred in concluding Hucks entered the office suite with the intent to commit larceny.  Accordingly, we affirm his conviction.

Affirmed.