COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and
          Clements
Argued at Alexandria, Virginia


MICHAEL TERRY SWICK, S/K/A
 MICHAEL TERRY SWICK, JR.
                                  MEMORANDUM OPINION[*] BY
v.    Record No. 1282-02-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       JUNE 24, 2003
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF STAFFORD COUNTY
            Russell I. Townsend, Jr., Judge Designate

           J. Bruce Strickland (Phillip Sasser, Jr.;
           Murphy & Strickland; Jarrell, Hicks &
           Sasser, P.C., on brief), for appellant.

           Amy Hay Schwab, Assistant Attorney General
           (Jerry W. Kilgore, Attorney General, on
           brief), for appellee.


     Michael Terry Swick (appellant) was convicted in a jury

trial of aggravated malicious wounding, in violation of

Code § 18.2-51.2. Appellant contends that (1) the trial court

erred in limiting cross-examination of his alleged accomplice

and (2) the evidence was insufficient to prove the victim's

injury was permanent and significant.  For the following

reasons, we affirm.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.  BACKGROUND

"'When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom.  The jury's verdict will not be disturbed unless plainly wrong or without evidence to support it.'"  Hucks v. Commonwealth, 33 Va. App. 168, 177, 531 S.E.2d 658, 662 (2000) (quoting Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999)).

So viewed, the evidence established that on November 26, 1999 Tobias Holovoka was beaten and robbed outside a bar in Stafford County.  Before he entered the bar, Holovoka saw people whom he did not recognize standing in the parking lot.  Later in the evening, Holovoka left the bar to check on his wife and he was attacked by two men.  "I was walking down the sidewalk, pretty much just blacked out right there . . . .  I believe I had lost consciousness for a while . . . .  I had suffered a blow to the back of my head and I assumed that, . . ., I was just knocked out right then and there."  He heard two different male voices.  One said "let him go, let's get out of here, or just let's get out of here . . . ."  Holovoka was "bleeding from [his] head and from [his] face, and . . . had, . . ., countless . . . bruises all up and down [his] back . . . [he] could feel them.  For a long time."

-

Holovoka was taken to the hospital and treated for a non-depressed skull fracture, a tripod fracture of his facial bones and a scapula fracture. He remained in the hospital for three days. At trial, two years and two months after the attack, Holovoka testified that he still had constant numbness in his face and several scars under his hairline. He stated that at the time of the attack he had approximately one hundred and forty dollars in his wallet.

James McCroskey, appellant's co-defendant,[1] testified that he and appellant agreed to break into cars and "see what [they] could find." They took several items, including a roofing hammer and a twelve pack of beer, from cars that were parked in front of the bar. McCroskey described the attack on Holovoka as follows:

> I had took [sic] a twelve pack of beer
> around the corner of the buildings and . . .
> [Holovoka] . . . came up and approached me
> . . . . He . . . told me he saw us breaking
> into the cars, confronted me. Me and him
> got into a confrontation. [Appellant] came
> up behind him, said, 'You're messing with my
> boy,' and hit him in the head with the
> hammer.

Appellant then took Holovoka's money from his wallet.

Shortly after the attack on Holovoka, appellant and McCroskey went to Geri Norrell's trailer. Norell testified that

---

[1] McCroskey, prior to this trial, pled guilty as a principal in the second degree to the malicious wounding and robbery of Holovoka.

-

appellant told her that "he beat the s**t out of somebody and he got some money."

The Commonwealth filed a motion in limine requesting the trial court to exclude evidence of alleged uncharged, criminal activities of McCroskey.  Counsel for appellant proffered the following:

> My client found out that his co-defendant
> had taken . . . weapons from [Mario Puga]
> and he informed [Puga], in return, or had
> [McCroskey] return those weapons to [Puga].
> [Puga] will testify to that, . . ., and that
> he thanked [appellant] for doing so and
> admonished [McCroskey] and that, . . .,
> shows bias, a series of events and the fact
> that . . . .  [Appellant] turned [McCroskey]
> in [to Puga] . . ., about those weapons.
> Now, there was no police involvement at that
> time, because he'll testify that he wanted
> to avoid that. . . .  He actually has a
> reason to try . . . to get even with
> [appellant] in just the weapons alone. . . .

The incident described by counsel for appellant allegedly occurred two and a half hours before appellant and McCroskey agreed to take items from the cars and the attack on Holovoka. The trial court granted the motion stating "[t]he Court finds that the evidence of Mr. McCroskey's alleged involvement in uncharged burglary of firearms is not a proper subject for impeachment in the trial against [appellant]. . . .  [T]he two incidents are not related, are not connected, they involve different parties, and that [they are] not proper evidence that can be used to impeach on the grounds of bias."

A jury convicted appellant of aggravated malicious wounding.

## II.   MOTION IN LIMINE

Appellant first contends the trial court erred in limiting his cross-examination of McCroskey about the theft of guns from Mario Puga earlier on the night of the attack.  Appellant argues that, because he told Puga that McCroskey took the items, McCroskey had a motive to fabricate his testimony.

> It is well settled in Virginia that a litigant's right to impeach the credibility of adverse witnesses by showing their participation in criminal conduct has been confined to questions about a conviction for a felony, perjury, and a misdemeanor involving moral turpitude.  This limitation upon a defendant's impeachment rights is a reasonably necessary measure to restrict the scope of a criminal trial. . . . [A]dmission of unadjudicated crimes for purposes of general impeachment of a witness would "lead to confusion in directing the jury's attention to collateral matters and away from the issues in the case."

Ramdass v. Commonwealth, 246 Va. 413, 423, 437 S.E.2d 466, 472 (1993) (quoting Clark v. Commonwealth, 202 Va. 787, 790, 120 S.E.2d 270, 273 (1961).

In the instant case, McCroskey's conduct was clearly collateral and had no relevance to a possible motive for McCroskey to fabricate his testimony.  McCroskey was never charged with any offense relating to the earlier taking and return of Puga's guns.  Shortly after the incident, appellant and McCroskey agreed to commit further unlawful acts and

-

remained with each other before, during and after the attack. The proffered evidence fails to meet any threshold of relevance or connection to any bias or motive to fabricate.

Additionally, at trial, McCroskey was fully cross-examined about any possible bias. His admissions included the following: 1) he was intoxicated the night of the attack; 2) he was also known as "Loco McCroskey;" 3) he gave several inconsistent statements about the events on the night of the attack; 4) between the time of his preliminary hearing and his indictment, the Commonwealth amended his charge from aggravated malicious wounding to malicious wounding; 5) after he agreed to testify against appellant, his bond status was changed from "no bond" to "$10,000 personal recognizance;" 6) a later failure to appear warrant was "dropped" on the same date he entered a guilty plea to robbery and malicious wounding specifically as a principal in the second degree; and 7) his sentencing on the instant charges was continued until after he testified in appellant's trial. Under these facts, the trial court did not err.

### III. SUFFICIENCY OF THE EVIDENCE

Appellant next contends that the evidence failed to prove Holovoka's injuries were sufficiently severe and caused permanent and significant damage as required by Code § 18.2-51.2. We disagree.

-

Code § 18.2-51.2 provides in pertinent part:   "If any person maliciously . . . wounds any other person, or by any means causes bodily injury, with the intent to main, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment."

Appellant argues that facial scarring and numbness are not "significant" and no medical evidence established Holovoka suffered any permanent restrictions on his activities, permanent impairment or any cosmetic disfigurement.  This argument is without merit.  Holovoka testified that he continues to have constant "numbness in the left side of [his] face" and scars on his head.  The emergency room physician testified that he suffered fractures of his facial bones and shoulder blade.

A scar on a victim's face is sufficient to satisfy the significant and permanent requirement of the statute.  See Commonwealth v. Donkor, 256 Va. 443, 507 S.E.2d 75 (1998) (four to six inch long facial cut); and Newton v. Commonwealth, 21 Va. App. 86, 462 S.E.2d 117 (1995) (several facial cuts resulting in scars).

There is no requirement that permanency be established solely by medical evidence.  Two years and two months after the attack, Holovoka still had scars on his head and a constant numbness in his face.  The nature and extent of Holovoka's

-

injuries were undisputed.  Credible evidence supports the jury's finding that Holovoka's injuries were both severe and permanent.

For the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed.</u>