COURT OF APPEALS OF VIRGINIA


Present:  Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


CHICKAN LAMONT CARTER

                                    MEMORANDUM OPINION* BY
v.    Record No. 1051-02-2         JUDGE WALTER S. FELTON, JR.
                                           JULY 8, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                    James E. Kulp, Judge Designate

            William T. Linka (Boatwright & Linka, on
            brief), for appellant.

            Virginia B. Theisen, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Chickan Carter was convicted in a bench trial of felony

burglary, in violation of Code § 18.2-89, and misdemeanor

peeping, in violation of Code § 18.2-130.  On appeal, Carter

contends that the trial court erred when it determined he

possessed the intent required for a conviction of breaking and

entering a dwelling with the intent to commit larceny.  We

affirm the judgment of the trial court.

                        I.  BACKGROUND

     On August 18, 2000, Ida Lewis, who lives alone, went to bed

at approximately 11:00 p.m.  Prior to going to bed, she closed

--------------------------------------------------

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

and latched the windows in her house and closed and locked the doors. In her bedroom, she closed and latched the screen then she left the window approximately halfway open. Her window shade was left open at the same level as the window.

At approximately 2:45 a.m., on August 19, Ms. Lewis was awakened by a noise at her window. When she went to the window, she noticed it was all the way up and the shade was raised higher than when she had gone to bed. Initially, she believed the screen had been cut, but realized that it had been raised as far as possible. In the open window, Ms. Lewis saw Carter's face and chest. She picked up the telephone and told him she was calling 911. Carter stepped down and backed away from the window, but did not immediately run.[1] She called 911 and began speaking with the 911 operator. Carter then ran.

At approximately 3:00 a.m. on August 19, two students, Jennifer Beales and Jessica Gillespie, saw a man dressed in all black run from behind Ms. Lewis' house, between their houses, and to a house across the street. Beales and Gillespie lived next door to Ms. Lewis. According to the two women, the man ran across the street, diagonally, to a house two or three houses away. The police arrived at Ms. Lewis' house shortly thereafter. Gillespie and Beales pointed out to Officer Bomgardner the house where the man had run.

---

[1] Carter stood on a lawn chair in order to get up to the window.

Officer Bomgardner went to the house and found Carter sitting on the back deck. The officer noticed that Carter's arm was bandaged and bleeding. In addition, he noticed Carter appeared intoxicated. Detective Sergeant Campbell spoke to Carter as well. Carter told Detective Sergeant Campbell that he was intoxicated and confused. He stated he locked himself out and may have gone to the wrong house.[2] Detective Sergeant Campbell noted the smell of alcohol from Carter, but Carter did not appear to be intoxicated and did not slur his speech. He did not appear to be "staggering drunk."

The police brought Carter to Ms. Lewis' house, and she identified him as the man she saw in her window. Evidence technicians took photographs of the crime scene and collected evidence. Among the evidence collected were blood samples from a stain located on the inside windowsill in Ms. Lewis' room and stains from the chair located outside her window.[3] The blood samples were analyzed, and DNA testing determined the blood to be that of Carter.

---

[2] At trial, a forensic toxicologist, Dr. Joseph Saady, testified that Carter's blood alcohol level at the time of the offense would have been such as to affect complicated tasks that require thought. However, he stated that it would not affect one's ability to perform an uncomplicated and repetitive task, such as returning home.

[3] The evidence technicians found no fingerprints at the crime scene and found no blood on the window shade.

-

On January 16, 2002, Carter was convicted in a bench trial of felony burglary, in violation of Code § 18.2-89, and misdemeanor peeping, in violation of Code § 18.2-130.

## II.  ANALYSIS

Carter contends that the evidence was insufficient to prove beyond a reasonable doubt that the breaking and entering of Lewis' house was with the intent to commit larceny.  We disagree.

> When the sufficiency of the evidence is challenged on appeal, it is well established that we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  The conviction will be disturbed only if plainly wrong or without evidence to support it.

Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992).

Code § 18.2-89 states, "If any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary . . . ."

> It is elementary that where, as here, the statute makes an offense consist of an act combined with a particular intent, proof of such intent is as necessary as proof of the act itself and must be established as a matter of fact.  Patterson v. Commonwealth, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975); Dixon v. Commonwealth, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955).
>
> Intent is the purpose formed in a person's mind which may, and often must, be inferred

-

> from the facts and circumstances in a particular case. The state of mind of an alleged offender may be shown by his acts and conduct. Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974); Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968).

Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979).

Our jurisprudence provides that in the absence of evidence showing a contrary intent, the trier of fact may infer that a person's unauthorized presence in a business or home was with the intent to commit larceny. See id. at 836-37, 252 S.E.2d at 314; Thompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971); Hucks v. Commonwealth, 33 Va. App. 168, 175, 531 S.E.2d 658, 661 (2000); Sandoval v. Commonwealth, 20 Va. App. 133, 137-38, 455 S.E.2d 730, 732 (1995).

In the case before us, no contrary intent was provided to explain Carter's unauthorized presence in Ms. Lewis' house.[4] Carter explained to the police at the time of his arrest and to the trial court that he was at Ms. Lewis' house because he locked himself out of his house and believed that he was trying

---

[4] Carter opened the screen, window, and put up the window shade. In addition, his blood was found on the inside windowsill. The trial court found that this evidence satisfied the elements and proved beyond a reasonable doubt that Carter broke and entered Ms. Lewis' house. See Franklin v. Commonwealth, 28 Va. App. 719, 721-22, 508 S.E.2d 362, 363-64 (1998); Phoung v. Commonwealth, 15 Va. App. 457, 460-61, 424 S.E.2d 712, 713-14 (1992). The issue of whether there was a breaking and entering is not before the Court, and we do not address it on appeal.

-

to enter his house.  He attributed this mistake to his intoxication and confusion.  The trial court rejected Carter's explanation, stating that the moment Carter was confronted by Ms. Lewis, he knew exactly where his house was located and ran directly there.  He did not deviate in going to his house, and he showed no confusion in getting there.  With Carter's explanation rejected, there was an absence of evidence showing a contrary intent, thus permitting the trial court to infer that Carter's unauthorized presence in Ms. Lewis' house was with the intent to commit larceny.

We hold that the evidence was sufficient to prove breaking and entering with the intent to commit larceny.  The judgment of the trial court is affirmed.

Affirmed.

-