COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Kelsey
Argued at Salem, Virginia


JOSEPH JOHN HICKS

                                                    MEMORANDUM OPINION* BY
v.       Record No. 1421-03-3                       JUDGE D. ARTHUR KELSEY
                                                         APRIL 13, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Charles N. Dorsey, Judge

John P. Varney (Office of the Public Defender, on brief), for
appellant.

Jennifer R. Franklin, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The trial court found Joseph John Hicks guilty of statutory burglary under Code

§ 18.2-91. On appeal, Hicks claims his conviction should be vacated because (i) the trial court

erroneously permitted a pretrial amendment to his indictment, and (ii) the evidence failed to

prove his guilt beyond a reasonable doubt as a matter of law. We affirm, finding neither

argument persuasive.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786, cert. denied, 124 S. Ct. 444

(2003). That principle requires us to "discard the evidence of the accused in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citation omitted); Pollino v. Commonwealth, 42 Va. App. 243, 245-46, 590 S.E.2d 621, 623 (2004).

For a brief period of time, Hicks moved into a home rented by Amy Bratton. While together, Hicks purchased a lawnmower and gave it to Bratton as a gift. He also gave her a porcelain doll during this period. The couple broke up and Hicks moved out. The day he moved out, Hicks took "every one of his belongings" and "returned every key" to Bratton.

About a week later, at around midnight, Bratton began receiving phone calls from Hicks. Bratton, who was alone that night, estimated Hicks made "20 or 25 or more" calls over the course of an hour to an hour and a half. She answered none of the calls, seeing on her caller ID that Hicks was the caller. She eventually took her phone off the hook and went to bed. Before turning in, she locked all the outside doors to the home.

Shortly thereafter, Bratton awoke to the sound of Hicks "banging at the door." She stayed in bed while Hicks banged the door "for about five to ten minutes." Bratton then heard "banging around in the kitchen with my kitchen cabinets, opening and shutting and slamming." Bratton got up to investigate and found Hicks in her kitchen. Hicks cursed Bratton and began "grabbing things out of the cabinet, out of the refrigerator" and taking them to a car parked in the driveway. Hicks "reeked" of the smell of alcohol. Bratton followed Hicks outside, all the while protesting his intrusion into her home.

After Hicks placed the items in the car, he reentered the house a second time "yelling" and "angry" at Bratton. Fearful of what Hicks might do, Bratton went into her bathroom, shut the door, and dialed 911. In a rage, Hicks "slammed" the bathroom door open, breaking off a rack on the back of the door. He demanded to know who Bratton called. "My mother," she told him. Hicks grabbed the phone from Bratton and hit redial. The police dispatcher answered.

- 2 -

Hicks claimed he dialed the wrong number and hung up. Hicks then "threw" Bratton into the bathtub. "He like shoved me very, very hard," Bratton explained, "and I laid in the bathtub in the fetal position." In the process, Hicks knocked the toilet "flat on its side." Hicks then "kept grabbing" at Bratton's arms, causing bruising on both arms. Bratton laid in the bathtub "praying to God I wouldn't get hit in the face." The police dispatcher called back and Hicks answered the phone. The dispatcher asked to speak with Bratton. Hicks said she "couldn't come to the phone right now."

When Hicks finally left the bathroom, Bratton got out of the tub and went into the living room. Hicks grabbed her set of keys and threw them at her. "I will be back to get you. I will be back," Hicks threatened as he walked out the door. Shortly thereafter, the police arrived and arrested Hicks. The arresting officer found Bratton's lawnmower, porcelain doll, and various food items in the car. He also noticed a "very strong odor" of alcohol surrounding Hicks.

Both Bratton and the investigating officer noticed that the window by the front door had several "pry marks" on the window frame "where someone had pried it open." These pry marks, Bratton said, were not there before the break-in that night. They also found the mini-blinds "disheveled" and the window slightly ajar.

A grand jury issued an indictment alleging that Hicks "did unlawfully and feloniously enter in the nighttime the dwelling house . . . belonging to Amy Bratton, with intent to commit larceny. Virginia Code Section 18.2-91." Just prior to trial, the Commonwealth moved to amend the indictment under Code § 19.2-231 to correct a potential variance between the indictment and the anticipated evidence. The proposed amendment asserted that Hicks "did unlawfully and feloniously *break and* enter in the nighttime the dwelling house . . . belonging to Amy Bratton, with intent to commit larceny *or assault and battery*. Virginia Code Section 18.2-91." (Additions italicized).

Hicks objected to the proposed amendment, arguing that he had already been found guilty of assault and battery arising out of this incident at a trial in the juvenile and domestic relations district court. He purposefully waived his right of appeal of the JDR district court conviction on the assumption that it would be irrelevant to a burglary charge alleging larceny. Had he known the assault and battery would be at issue in the burglary charge, Hicks argued, he would have appealed this conviction to the circuit court for a *de novo* determination — thereby precluding (he apparently reasoned) the prosecutor in the burglary trial from mentioning it. Finding Hicks's alleged predicament to be self-imposed,[1] the trial court applied the governing standard set forth in Code § 19.2-231 and overruled Hicks's objection to the amendment. To ensure that Hicks had ample time to prepare for trial on the amended indictment, however, the trial court offered him a continuance. Hicks rejected the offer, confirming that he was prepared to try the case.

At trial, Hicks denied giving Bratton either the lawnmower or the porcelain doll. Though used to cut her grass at her home, Hicks testified, the lawnmower was his. As for the porcelain doll, Hicks explained that his father collected porcelain dolls and he too wanted to take up the hobby. Concerning Bratton's injuries, Hicks said Bratton accidentally fell into the tub on her own. The bruises on her arms, he asserted, came from his helpful efforts to get her back on her feet. He admitted telling the police dispatcher that Bratton "couldn't come to the phone right now." But that "was the truth," Hicks explained, "because she was in the tub."

---

[1] For purposes of resolving this appeal, we need not determine whether Hicks's ostensible quandary was in any way real — that is, whether (i) the prosecutor could have introduced *on the merits* the district court assault and battery conviction (in contrast to using it as a mere item of potential impeachment) at a burglary/assault and battery trial, or whether (ii) the prosecutor, in any event, could have presented evidence of the *factual* circumstances of the assault and battery in the burglary/larceny trial for the contextual purpose of showing Hicks's use of force to complete the theft and evade capture (notwithstanding the seemingly irrelevant fact that the assault and battery conviction had been vacated by virtue of a *de novo* circuit court appeal).

On cross-examination, Hicks conceded that he had two prior felony convictions and two previous convictions for misdemeanors involving moral turpitude.

Rejecting Hicks's testimony as "virtually incredible," the trial court found him guilty of statutory burglary under the amended indictment. The court imposed a three-year prison term, with two years suspended.

II.
A.

On appeal, Hicks first contends that the trial court erred by granting the Commonwealth's motion to amend the indictment. He argues that by adding the words "or assault and battery" to the indictment, the court "changed an essential element, the intent required, and, therefore, changed the nature and character of the charge in derogation of Section 19.2-231." It is debatable whether Hicks's argument before the trial court could rightly be characterized as a challenge under Code § 19.2-231. His argument below dealt more with perceived consequences of the amendment on his strategic decision not to appeal his assault and battery conviction than any comparative analysis of the "nature and character" of the original and amended indictments. In any event, giving Hicks the benefit of the doubt, we find no merit in his argument under Code § 19.2-231.

The point of an indictment "is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser." King v. Commonwealth, 40 Va. App. 193, 198, 578 S.E.2d 803, 806 (2003) (quoting Sims v. Commonwealth, 28 Va. App. 611, 619, 507 S.E.2d 648, 652 (1998)). Code § 19.2-220 requires indictments to contain "a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." Rule 3A:6(a) also requires the indictment to "cite the statute or ordinance that

defines the offense . . . ." See also Reed v. Commonwealth, 3 Va. App. 665, 667, 353 S.E.2d 166, 167-68 (1987). Read together, "'the inference to be drawn from the provisions of Code § 19.2-220 and Rule 3A:6(a) is clearly that incorporation by . . . reference' of the statute cited in the indictment 'is contemplated by the Rule.'" Thomas v. Commonwealth, 37 Va. App. 748, 753, 561 S.E.2d 56, 58 (2002) (quoting Reed, 3 Va. App. at 667, 353 S.E.2d at 167).

Where there is a "defect in form" or a "variance between the allegations" in the indictment and "the evidence offered in proof thereof, the court may permit amendment of such indictment . . . at any time before the jury returns a verdict or the court finds the accused guilty or not guilty . . . ." Code § 19.2-231. The amendment cannot "change the nature or character of the offense charged." Id. The nature-or-character test, however, must be applied with the understanding that the "statute is remedial in nature and is to be liberally construed in order to achieve the laudable purpose of avoiding further unnecessary delay in the criminal justice process by allowing amendment, rather than requiring reindictment by a grand jury." Powell v. Commonwealth, 261 Va. 512, 533, 552 S.E.2d 344, 356 (2001); see also Thomas v. Commonwealth, 25 Va. App. 256, 262, 487 S.E.2d 289, 292 (1997), aff'd, 256 Va. 38, 501 S.E.2d 391 (1998).

In this case, the grand jury charged Hicks with statutory burglary and cited Code § 18.2-91 in the indictment. This section proscribes the act of entering the dwelling house of another at nighttime and provides alternative *mens rea* elements. Regardless of the intent that motivated the burglary, however, the "overt acts constituting the crime are the same — that is, the breaking and entering." Sullivan v. Commonwealth, 157 Va. 867, 876, 161 S.E. 297, 300 (1931). "The intent with which the particular crime is committed does not change its general nature or character, because whichever intent is shown, the crime is of the same nature — that is, a felony of the specific class denounced by the statute." Id.

- 6 -

To be sure, the *mens rea* component of this particular statute includes a broad range of intents (larceny, assault and battery, any felony other than murder, rape, robbery, and arson). The specific elements of the charge change, of course, as one shifts from one gradation marker to the next. But that does not mean, as Hicks argues, the general "nature or character" of the offense necessarily changes as well. If that were true, the very act of amending an indictment to change an element of the offense would, as a matter of law, invariably preclude the amendment. We have never read Code § 19.2-231 in such a self-defeating manner. And for good reason: "The legislative intent is to simplify criminal procedure. A narrow construction of the statute . . . would defeat its wise purpose." Sullivan, 157 Va. at 877, 161 S.E. at 300 (commenting on predecessor statute).

Under the facts of this case, the addition of an assault and battery *mens rea* to the original indictment changed one of its specific elements, but not its general nature or character. For this reason, we hold that the trial court did not violate Code § 19.2-231 by overruling Hicks's objection and proceeding to trial on the amended indictment.

B.

Hicks next challenges the sufficiency of the evidence. When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence" to support it. Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (citations omitted). Under this standard, a trial judge's factual findings cannot be disturbed on appeal unless no "rational trier of fact" could have come to the conclusions he did. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Holmes v. Commonwealth, 41 Va. App. 690, 691, 589 S.E.2d 11, 11 (2003); Crowder

v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003); Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992).[2]

Practically speaking, this means a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318-19 (emphasis in original and citation omitted). It asks instead whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319 (emphasis in original)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). It also ensures that we remain faithful to our duty "not to substitute our judgment for that of the trier of fact, even were our opinion to differ." Crowder, 41 Va. App. at 663 n.1, 588 S.E.2d at 387 n.1 (citations and internal quotation marks omitted).

The trial court found Hicks guilty under the amended indictment, which alleged that Hicks "did unlawfully and feloniously break and enter in the nighttime the dwelling house . . . belonging to Amy Bratton, with intent to commit larceny or assault and battery. Virginia Code Section 18.2-91." On appeal, Hicks does not contest that he broke into Bratton's home at night. He claims, however, that no evidence proved that he did so with the intent to commit either a larceny or an assault and battery.[3] We find sufficient evidence in the record to prove both.

---

[2] This deference applies not only to the historical facts themselves, but the inferences from those facts as well. "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Crowder, 41 Va. App. at 663 n.2, 588 S.E.2d at 387 n.2 (quoting Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991)).

[3] Hicks concedes on appeal that sufficient evidence on either intent (larceny or assault and battery) resolves any sufficiency objections he has to his conviction. He also concedes that he never objected in the trial court to the disjunctive wording of the amended indictment.

Because the amended indictment asserted the two state-of-mind elements in the disjunctive, we will address only the assault and battery issue.

To begin with, we start with the premise that Hicks entered for an unlawful purpose. "When an unlawful entry is made into the dwelling of another, the presumption is that the entry is made for an unlawful purpose." Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984) (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)); see also Hucks v. Commonwealth, 33 Va. App. 168, 175, 531 S.E.2d 658, 661 (2000) (noting that an "unlawful entry into [the] dwelling of another [gives rise to a] presumption . . . that the entry was made for an unlawful purpose" (quoting Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971))).[4] That presumption does not establish the specific unlawful purpose motivating Hicks, but it does directly undermine his assertion that his intent was entirely lawful.

To discern specific intent, factfinders must necessarily look to the "surrounding facts and circumstances" before, during, and after the break-in. Scott, 228 Va. at 524, 323 S.E.2d at 575; see also Robertson v. Commonwealth, 31 Va. App. 814, 822, 525 S.E.2d 640, 644 (2000). The facts and circumstances of this case, we believe, provide a rational basis for the factfinder to narrow Hicks's general unlawful purpose down to the specific purpose of assault and battery. The night began with Hicks placing twenty to twenty-five (or more) telephone calls to Bratton. After she took the phone off the hook, Hicks knew that she was home and would not answer.

---

[4] "As with the other old presumptions, this one is characterized as a permissive inference, not a conclusion about an element of the offense." John L. Costello, Virginia Criminal Law & Procedure § 9.2-3, at 141 (3d ed. 2002). In this context, "an inference, sometimes loosely referred to as a presumption of fact, does not compel a specific conclusion." Martin v. Phillips, 235 Va. 523, 526 n.1, 369 S.E.2d 397, 399 n.1 (1988). "An inference merely applies to the rational potency or probative value of an evidentiary fact to which the fact finder may attach whatever force or weight it deems best." Id. (citing 9 J. Wigmore, Evidence in Trials at Common Law § 2491(1), at 304 (Chad. rev. 1981)).

Despite this knowledge, he broke into her home around midnight after "banging" on the door for five to ten minutes. After making one trip to his car with items from Bratton's home, Hicks *reentered* the home a *second* time. This time he was "angry" and "yelling" at Bratton, who repeatedly asked him to leave. He then promptly followed Bratton into the bathroom where she had taken refuge to call the police, broke open the door, and assaulted her. He twice lied to the police dispatcher seeking to make contact with Bratton. As he walked out the door, Hicks declared that he would "be back to get [her]. I will be back." This evidence supports the trial court's factual finding that Hicks entered Bratton's home (particularly the second time) with an enraged personal animus toward her. His assaultive intent, which he almost immediately carried out upon his reentry into the home, can be reasonably inferred from these circumstances.

That Hicks, a convicted felon, denied any such intent adds nothing to his argument.[5] A factfinder may — and in this case did — discount a defendant's "self-serving explanation as a mere effort at 'lying to conceal his guilt.'" Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001)). The trial court, moreover, can also consider such falsehoods "probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." Dugger, 40 Va. App. at 594 n.2, 580 S.E.2d at 481 n.2 (citations omitted); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (recognizing "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'" (quoting Wright v. West, 505 U.S. 277, 296 (1992))). These principles naturally follow from the broader observation that "whenever a witness testifies, his or her

---

[5] It is equally not dispositive that Hicks may have had other intents. "The mere possibility that the accused might have had *another* purpose than that found by the fact finder is insufficient to reverse a conviction on appeal." Hancock, 12 Va. App. at 782-83, 407 S.E.2d at 306 (emphasis added).

credibility becomes an issue." <u>Hughes v. Commonwealth</u>, 39 Va. App. 448, 462, 573 S.E.2d

324, 330 (2002) (citation omitted).

III.

Finding no error in the trial court's pretrial amendment of the indictment or its final

judgment finding Hicks guilty of statutory burglary, we affirm.

<u>Affirmed.</u>