*254 UPON A REHEARING EN BANC
HUMPHREYS, Judge.
This matter comes before the Court on a rehearing en banc from an unpublished panel decision rendered January 21, 2003. See Kelly v. Commonwealth, 03 Vap UNP 3100011, 2003 WL 139520 (2003). In that decision, a divided panel of this Court affirmed Kelly’s conviction for possession of marijuana with intent to distribute (in violation of Code § 18.2-248.1) , but reversed his conviction for importing narcotics into Virginia with intent to distribute (in violation of Code § 18.2-248.01) , finding the evidence insufficient, as a matter of law, to support that conviction. By order dated February 21, 2003, we granted the Commonwealth’s petition for a rehearing en banc, stayed the mandate of that decision, and reinstated the appeal. Upon rehearing en banc, we affirm the judgment of the trial court as to both convictions.
I. Background
When the sufficiency of the evidence is challenged on appeal, we review the evidence “in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.” Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987). “ Tn so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.’ ” Watkins v. Commonwealth, 26 Va.App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va.App. 292, 295, 373 S.E.2d 164, 165 (1988)).
So viewed, the evidence proved that on March 14, 2000, State Trooper William Talbert stopped the car Kelly was driving for having unapproved tinting on its windows. Kelly was driving southbound on Route 13 in Accomack County. Talbert approached the driver’s side of the car and asked Kelly for his identification. The officer testified Kelly ap *255 peared nervous and that his hands shook. Talbert detected the odors of both burnt and “green” marijuana.
Kelly’s license bore a Norfolk address. Talbert asked Kelly “where are you coming from?” Kelly twice told the officer that he and his passenger, Joey Knight, had been in Maryland. Kelly stated he was not sure where in Maryland he had been, and told Trooper Talbert that he would have to ask Knight about that.
Because he had smelled “burnt marijuana in the car and green marijuana,” Talbert told Kelly he was going to “search him and his car and also [Knight]____” Talbert then searched Kelly’s car.
In the front [Talbert] could kind of smell burnt and greenish marijuana a little bit and then [Talbert] observed what [he] believed to be marijuana flakes and buds in the front seat-left front seat right quarter and between the front left and right bucket seats around the console carpet area seeds and buds of marijuana in the carpeting and [he] looked underneath and [he] could smell kind of a greenish tinge of marijuana heavier like underneath on the floor board like under the seats and so forth. [Talbert] went to the back seat and pulled ... down the rear seat compartment. Not all the way back in the cargo area. [Talbert] pushed the button down and pulled the rear seat forward. The back of it folded down and there was a black duffel bag behind the back seat in the cargo area of the vehicle.
# % # sfc Hí £
[Talbert] unzipped it and [he] saw several looked [sic] like up to six cellophane wrapped [sic] heavily wrapped you couldn’t tell what was in it packages of what [Talbert] assumed to be drugs....
At that point, Talbert told Kelly he was under arrest for “trafficking cocaine.” Kelly looked “extremely surprised” and stated, “Cocaine?”
Talbert transported the two men to the police station. As he placed the duffel bag on a table and began to take out the *256 heavily wrapped bags, Kelly exclaimed, “Man, that ain’t my weed.” Talbert testified he did not know the contents of the bag until he cut through the cellophane, that Kelly was not in a position where he could observe the contents of the bag, and had not been told the bag contained marijuana.
The officers later determined the bag contained twenty pounds and five ounces of marijuana. Talbert testified that amount of marijuana was inconsistent with personal use.
Kelly testified on his own behalf. He stated that he had met “up” with Knight that morning to go to Maryland to “see two strippers [Knight] had met the previous week.” He claimed that when he arrived at Knight’s home that morning, Knight asked if he could use Kelly’s car to go to the store. Kelly stated that he agreed, and waited at Knight’s home until he returned, about fifteen to twenty minutes later.
Kelly testified that the two men left for Maryland at about 11:30 a.m. Kelly claimed that on their way there, they had veered off of Route 13 to make a stop at a “Stuckey’s” restaurant to get “[s]oda, chips and ... a lottery ticket.” When they left Stuckey’s and returned to Route 13, Kelly made a wrong turn, causing the car to travel toward Norfolk and away from Maryland. Kelly stated that it was at that time that he was stopped by Trooper Talbert.
Kelly agreed that Trooper Talbert asked him “where [he] was coming from,” but then quickly changed his mind and testified that Trooper Talbert asked him “where he was going to.” Kelly claimed that he told Trooper Talbert he was going to Maryland. He further claimed that he had never been to Maryland, and denied having any knowledge that the black bag was in his car, or that marijuana was in his car. He testified that when he was at the police station and stated “that ain’t my weed,” the contents of the bag were laid out on the table, “in plain view.”
The trial court ruled as follows:
In this case the facts are in some respects in dispute. The court finds that [Kelly] was on U.S. Route 13; that he stopped at Stuckey’s roadside commercial establishment; *257 that he then proceeded south on U.S. Route 13 towards Norfolk away from Maryland when the trooper stopped him proceeding in that direction. He did not tell the trooper that he was headed in the wrong direction. There is no evidence that emanates from that particular time to indicate that he was going in a wrong direction. He told the trooper on two separate occasions that he was coming from Maryland. There is no evidence to indicate at all that he was doing otherwise. There is no evidence to indicate that he had stopped anywhere other than in Accomack County after coming to Maryland. The evidence is clear that [Kelly] was coming from Maryland.
The court further found that the evidence clearly established “[Kelly] did know what was in those packages and he said that weed is not mine.” Therefore, the trial court found Kelly “guilty as charged on both counts.”
II. Analysis
On appeal, Kelly contends the trial court erred in finding the evidence sufficient, as a matter of law, to prove that he transported the drugs into the Commonwealth and/or to prove that he possessed the drugs. We disagree.
When considering on appeal the sufficiency of the evidence presented below, we “presume the judgment of the trial court to be correct” and reverse only if the trial court’s decision is “plainly wrong or without evidence to support it.” Davis v. Commonwealth, 39 Va.App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va.App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). Thus, we do not “substitute our judgment for that of the trier of fact.” Wactor v. Commonwealth, 38 Va.App. 375, 380, 564 S.E.2d 160, 162 (2002). “Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). “This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts *258 in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Id.
As Kelly accurately points out, in circumstantial evidence cases, the reasonable doubt standard requires proof “sufficiently convincing to exclude every reasonable hypothesis except that of guilt.” Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, “[t]here is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination.” Commonwealth v. Hudson, 265 Va. 505, 512-13, 578 S.E.2d 781, 785 (2003). Moreover, this principle, “does not add to the burden of proof placed upon the Commonwealth in a criminal ease. The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.” Id. at 513, 578 S.E.2d at 785 (citation omitted).
In regard to Kelly’s first contention, Code § 18.2-248.01 provides, in pertinent part, that “it is unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute ... five or more pounds of marijuana.” “[A] violation of Code § 18.2-248.01 occurs at the moment a person transporting illegal substances penetrates the borders of the Commonwealth.” Seke v. Commonwealth, 24 Va.App. 318, 325, 482 S.E.2d 88, 91 (1997).
It is undisputed that Kelly was transporting illegal drugs in his car when he was stopped by Trooper Talbert. It is further undisputed that, at the time he was stopped by Trooper Talbert, Kelly was traveling southbound on Route 13 in Virginia, away from Maryland and toward Norfolk. Moreover, viewed in the light most favorable to the Commonwealth, the evidence presented below demonstrated that the odor of both burnt and green marijuana emanated from the car and that, upon questioning by Trooper Talbert, Kelly twice informed Trooper Talbert that he and Knight had just come from “somewhere in Maryland.”
*259 Thus, contrary to Kelly’s contention on appeal, the Commonwealth clearly presented evidence, although entirely circumstantial, “relating to the entry of the marijuana into Virginia and [Kelly’s] role in that entry.” We find that this evidence reasonably supported the trial court’s determination that when he was stopped by Trooper Talbert, Kelly had just transported the drugs from the State of Maryland, into the Commonwealth of Virginia. Indeed, the appellate courts of this Commonwealth have long recognized that circumstantial evidence is not to be viewed in isolation. See Hudson, 265 Va. at 514, 578 S.E.2d at 786; see also Pease v. Commonwealth, 39 Va.App. 342, 360, 573 S.E.2d 272, 280 (2002) (citing Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991); Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979); Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)). “ While no single piece of evidence may be sufficient, the “combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.” ’ ” Id. (quoting Derr, 242 Va. at 425, 410 S.E.2d at 669). On this basis, and viewing the evidence in the light most favorable to the Commonwealth, we find no error in the trial court’s determination that the Commonwealth’s evidence proved the essential elements of the crime at issue beyond a reasonable doubt.[1]
Kelly’s contention that the Commonwealth’s evidence failed to exclude any reasonable hypotheses of innocence does not persuade us differently. Indeed, whether an “alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.” Stevens v. Commonwealth, 38 Va.App. 528, 535, 567 S.E.2d 537, 540 (2002) (citations omitted). On this evidence, it is clear that the trial court could have reasonably rejected Kelly’s theories in his defense and found him guilty of transporting illegal drugs *260 into the Commonwealth beyond a reasonable doubt. Indeed, the evidence gathered by Trooper Talbert during the stop excluded Kelly’s theories of innocence presented at trial. See Hudson, 265 Va. at 517, 578 S.E.2d at 787-88.[2] Thus, the trial court was entitled to infer, upon its reasonable rejection of Kelly’s alternative hypotheses of innocence, that Kelly was lying to conceal his guilt, lending further support to its judgment of guilt. Dowden v. Commonwealth, 260 Va. 459, 469-70, 536 S.E.2d 437, 442 (2000) (citations omitted).
In regard to Kelly’s next contention, that the Commonwealth failed to establish he possessed the drugs, we note that “[t]he Commonwealth may prove possession of a controlled substance by showing either actual or constructive possession.” Barlow v. Commonwealth, 26 Va.App. 421, 429, 494 S.E.2d 901, 904 (1998). To support a conviction based upon constructive possession, “the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.” Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). However, “[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs____” Brown v. Common *261 wealth, 15 Va.App. 1, 10, 421 S.E.2d 877, 888 (1992) (en banc). Further, possession of drugs, whether actual or constructive, need not be exclusive, but may instead be joint. Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983). Moreover, “[although mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered in determining whether a defendant possessed the contraband. Ownership or occupancy of the premises on which the contraband was found is likewise a circumstance probative of possession.” Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997) (citation omitted).
As stated above, in the case at bar, Trooper Talbert testified he noted a strong scent of burnt and green marijuana emanating from Kelly’s vehicle. It is undisputed that Kelly was the owner and driver of the car, and appeared nervous during the encounter with the officer. Moreover, Kelly appeared surprised upon hearing he was being arrested for possession of cocaine and, at the police station, Kelly indicated the marijuana was not his before he had been informed there was marijuana in the bag. Kelly’s statements and conduct, in conjunction with his ownership of the vehicle and proximity to the drugs, clearly support the reasonable inference that he knowingly possessed them. Likewise, this evidence provided the trial court with a reasonable basis upon which to reject Kelly’s protestations of innocence. We thus find the trial court reasonably determined that the Commonwealth’s evidence was sufficient to prove beyond a reasonable doubt that Kelly was guilty of possession of marijuana with the intent to distribute. Accordingly, we affirm the judgment of the trial court as to each of Kelly’s convictions.

Affirmed.

. We do not address the rather extensive discussion between the parties regarding whether the trial court properly relied upon its own knowledge of the local geography in reaching its conclusion because we find no evidence in the record reflecting the trial court’s consideration of any such evidence.

. Furthermore, as noted above, Kelly testified at trial on his own behalf. During his testimony, Kelly specifically stated that he and Knight stopped at the Stuckey’s to get ”[s]oda, chips and ... a lottery ticket.” Kelly did not contend that he obtained the drugs at the Stuckey's, nor did he claim that Knight had the opportunity to obtain the drugs while they were there, so that he could put them in the car without Kelly’s knowledge. Thus, to hold that it is a reasonable hypothesis that the drugs were obtained at the Stuckey’s in Virginia would require an exercise in pure speculation outside the record. Indeed, contrary to the rationale in the concurring/dissenting opinion, no evidence presented at trial supports such a "hypothesis” of innocence. Moreover, it is well settled that the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence and that "[h]ypotheses not flowing from the evidence must be rejected.” Fordham v. Commonwealth, 13 Va.App. 235, 239, 409 S.E.2d 829, 831 (1991).