COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia

ROBERT T. HUBER

                                               MEMORANDUM OPINION[*] BY
v.        Record No. 1926-04-2               JUDGE ROBERT P. FRANK
                                                  OCTOBER 4, 2005

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
                          Pamela S. Baskervill, Judge

          James T. Maloney for appellant.

          Richard B. Smith, Senior Assistant Attorney General (Judith
          Williams Jagdmann, Attorney General, on brief), for appellee.


        Robert T. Huber, appellant, was convicted, in a bench trial, of unauthorized use of a

vehicle in violation of Code § 18.2-102.  On appeal, he contends the trial court erred in finding

the evidence was sufficient to convict.  Specifically, he argues he had permission to use the

vehicle and did not exceed the scope of authority.  For the reasons stated, we affirm the

conviction.

                                  BACKGROUND

        Appellant was to move in with his sister, Carla Bumgardner, on October 24, 2003.  That

day, Bumgardner loaned appellant her Ford Focus, valued at more than $200, so appellant and

Bumgardner's daughter could visit appellant's mother.  Appellant returned the car about twenty

minutes later.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Bumgardner's ex-husband, Tim Nunnally, also was at her home that day. Nunnally had a set of keys to the Focus and had her permission to use the car whenever he wanted.

Bumgardner and appellant picked up her son from a football game and returned home. She went to bed around 11:00 p.m.

Bumgardner did not give appellant permission to use her car later that night. However, after Bumgardner had gone to bed, appellant asked Tim Nunnally for his keys to Bumgardner's car so he could go to his boss' house, about a mile away on the same road.

Nunnally testified he gave appellant permission to use the vehicle to go to his boss' house. He told appellant "to make sure he brings it back." Nunnally "gave [appellant] the keys and told him to make sure he come [sic] back. He knew the consequences." When Nunnally was asked what he had meant when he said the appellant "knew the consequences" of not returning the car, he testified: "It wasn't my car to loan out to begin with, but he needed the car."

Nunnally did not give appellant permission to keep the vehicle overnight, nor did he give appellant permission to go anywhere other than his boss' house. In fact, appellant did not ask for permission to use the car for any other purpose. However, Nunnally did not give appellant a specific time to return the vehicle, nor was there a specific admonition not to use the vehicle for other purposes.

When the car had not been returned by 5:00 p.m. the next afternoon, Bumgardner called the police. The police thereafter found Bumgardner's Focus parked in a Burger King parking lot. The set of keys Nunnally had loaned appellant were under the seat of the locked car. The car had been "abandoned." Ms. Bumgardner finally got her car back about 7:30 p.m. on October 25.

- 2 -

The trial court convicted appellant, finding that even if Nunnally had the authority to grant appellant permission to use Bumgardner's vehicle, appellant exceeded the scope of Nunnally's "limited permission."[1]

ANALYSIS

On appeal, appellant contends his use of his sister's vehicle was not limited to driving to his boss' house because Nunnally never specifically restricted his use of the vehicle.

Our analysis therefore focuses on whether the trial court erred in finding Nunnally's permission was limited, i.e., whether appellant's use of the vehicle exceeded the scope of permission.

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). This means a jury's verdict cannot be overturned on appeal unless no "'rational trier of fact'" could have come to the conclusion it did. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*) ("We let the decision stand unless we conclude no rational juror could have reached that decision."), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether

---

[1] For the purpose of this opinion, we assume Nunnally had permission to loan the car to appellant.

"'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

Clearly, appellant initially had permission to use his sister's vehicle. Yet, pursuant to Code § 18.2-102:

> When an owner consents to another person having temporary possession of the owner's vehicle, but does not consent to its use beyond a designated period of possession, the statute is violated when such use continues without the owner's consent and is accompanied by an intent to temporarily deprive the owner of possession of the vehicle. See Overstreet v. Commonwealth, 17 Va. App. 234, 238, 435 S.E.2d 906, 908-09 (1993).

Tucker v. Commonwealth, 268 Va. 490, 494, 604 S.E.2d 66, 68 (2004).

In Tucker, the vehicle's owner gave Tucker permission to use his vehicle to visit a restaurant and convenience store, after which he was to return the car to the owner. At the restaurant, the owner again told Tucker to "[g]o back to the house and I'll be there." Id. at 492, 604 S.E.2d at 67. Tucker did not return with the car. Id. Several days later, when the owner saw Tucker in his vehicle, Tucker "sped off" when the owner attempted to approach the vehicle. Id. The Supreme Court of Virginia, in affirming the conviction, concluded:

> We also find no merit in Tucker's contention that he could not be convicted of unauthorized use because the vehicle owner did not specify the time or date when the owner's consent would terminate. Code § 18.2-102 contains no such requirement, and the evidence plainly allowed the fact finder to conclude that the owner's permission to let Tucker use the car to go to a restaurant

- 4 -

and a store did not extend to a period of several days afterward in which the car was removed from the owner's lawful possession.

Id. at 494-95, 604 S.E.2d at 68-69.

Appellant contends that since Nunnally did not specifically tell appellant he must return the vehicle that night, nor did he specifically limit appellant's use to visiting his boss and no other purpose, his use was not unauthorized.

Nunnally told appellant to "make sure he come [sic] back" with the vehicle. Appellant did not comply with this demand. The car was found the next day, abandoned at a fast-food restaurant. From the fact that the keys given to appellant were locked inside the car, the fact finder could reasonably conclude appellant had no intention of returning to the vehicle, and had likewise no intention of returning the vehicle to his sister. This, in itself, violated the scope of the consent to use the vehicle.

As we said in Overstreet:

> Thus, where the owner gives consent to a temporary possession or a possession for a limited purpose, the expiration of that qualification creates a constructive revestment of possession in the true owner with "bare charge or custody" in the other person. A violation of the owner's possessory right constitutes a trespassory taking.

17 Va. App. at 236, 435 S.E.2d at 908 (quoting 50 Am. Jur. 2d Larceny § 23 (1970)).

Further, appellant asked for permission to use the vehicle to visit his boss, a short distance away. Therefore, appellant, himself, limited the scope of the permission granted. Nunnally acceded to appellant's request to use the vehicle for a limited purpose. See Bass v. State, 138 N.W.2d 154, 157 (Wis. 1965) (holding that permission to use a vehicle for one purpose cannot, under any reasonable interpretation, be construed as implied consent to take the vehicle to an unknown destination on an errand completely non-beneficial to owner and completely unrelated to the purpose for which possession of vehicle was given).

Based on appellant's representation that he would use the vehicle to visit his boss, Nunnally relinquished possession of the vehicle to appellant. The evidence clearly demonstrates that appellant exceeded the permission he had received for its use and supports the trial court's finding of criminal intent to temporarily deprive his sister of the use of the vehicle.

We reject appellant's argument that Nunnally must specifically tell appellant of the limited scope of permission. Appellant cites footnote 2 in Overstreet that states, "This is not to say that in every instance where a person is in possession of property with the owner's consent, an unanticipated use constitutes a trespass." 17 Va. App. at 238 n.2, 435 S.E.2d at 908 n.2. We then concluded in the footnote, "Our focus is strictly on acts that violate the owner's express limitations of the scope or duration of the consent given." Id. This footnote is dicta to clarify and limit the scope of the opinion. It was not necessary to resolve the issues in that case. See Newman v. Newman, 42 Va. App. 557, 565, 593 S.E.2d 533, 537 (2004) (*en banc*) ("Dicta in a prior decision generally refers to that portion of an opinion 'not essential' to the disposition in the case." (quoting Cent. Green Co. v. United States, 531 U.S. 425, 431 (2001))).

In his brief, appellant offers a number of scenarios that he contends are a reasonable hypothesis of innocence, such as another person used the vehicle instead of appellant. He claims no evidence indicated he used the vehicle after visiting the boss' house, nor was there any evidence that the Burger King parking lot "fell beyond the distance between his sister's home and the boss's home."

As the Supreme Court stated in Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003):

> The issue upon appellate review is not whether "there is some evidence to support" these hypotheses. The issue is whether a reasonable jury, upon consideration of all the evidence, could have rejected Hudson's theories in his defense and found him guilty of murder beyond a reasonable doubt.

First, we should note there is no evidence to support this hypothesis, nor did appellant argue these issues in his motion to strike. His sole argument below was there was no limitation of his use of the vehicle. "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. We will not consider an argument on appeal that was not presented to the trial court. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

We conclude that the scope of the authorization does not need to be expressly stated as long as the limitation is amply clear to the appellant, based on the totality of the circumstances. Here, appellant was told to return with the vehicle. He did not. He asked only for permission to use the car to visit his boss. The car was found abandoned at a location other than the boss' house.

We, therefore, affirm the conviction.

Affirmed.