COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


GARRETT E. MUSHAW

                                                    MEMORANDUM OPINION* BY
v.       Record No. 2811-04-2                JUDGE ELIZABETH A. McCLANAHAN
                                                         APRIL 18, 2006
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Margaret P. Spencer, Judge

            Gregory R. Sheldon (Goodwin, Sutton & DuVal, PLC, on brief),
            for appellant.

            Karri B. Atwood, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General; Paul C. Galanides, Assistant
            Attorney General, on brief), for appellee.


        The trial court convicted Garrett E. Mushaw of making a false application for public

assistance in violation of Code § 63.2-502.  He contends the evidence was insufficient to prove

he knowingly made a false statement on his application.  For the reasons that follow, we affirm

his conviction.

                                    I.  BACKGROUND

        We view the evidence and the reasonable inferences in the light most favorable to the

Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786, cert.

denied, 540 U.S. 972 (2003).  In so doing, we "'discard the evidence of the accused in conflict

with that of the Commonwealth.'"  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (citation omitted).  In response to emergency conditions created by Hurricane Isabel

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

on September 18, 2003, federal funds were made available to affected residents in the form of disaster food stamp benefits. The program was administered in Virginia by the Virginia Department of Social Services ("DSS"). On October 2, 2003, Mushaw applied for, and subsequently received, food stamp benefits under the program. At the time, Mushaw, a Richmond resident, was employed by DSS as an accountant in its finance department and held a masters degree in business administration. Following an investigation of all DSS employees who received those benefits, Mushaw was indicted for making a false application for benefits in violation of Code § 63.2-502.[1]

The Commonwealth's position at trial was that Mushaw, *inter alia*, knowingly and falsely represented on his application that the money in his bank accounts was not available to him at the time he applied for benefits because of the disaster. In his defense, Mushaw denied *knowingly* making any such false representation on his application. Instead, he faulted the social workers, who assisted him with his application, for any incorrect information contained in the application.

At trial, Brinette Jones, a social worker, explained the application process implemented at the DSS office in Richmond where Mushaw applied. Jones stated that social workers distributed application forms to those in line outside the office and then directed them in groups of thirty to an inside conference room. Applicants were required to bring documentation of residence, which the social workers reviewed while the applicants waited in line or after they entered the conference room. Jones initialed Mushaw's application, verifying his identity and residency from his driver's license.

---

[1] Pursuant to Code § 63.2-502, one who knowingly makes a false application for such benefits is guilty of perjury.

Inside the conference room, Jones and other social workers explained the questions on the application and the application process. They also answered applicants' questions about the application. The applicants were to complete the application at this stage of the process. Jones testified that, preliminarily, every applicant needed to know the dates of the disaster benefit period in order to complete the application. Those dates, September 18 through October 17, 2003, were posted on a board in the front of the conference room. Social workers also orally explained the benefit period to the applicants. In addition, the dates for the benefit period were to be inserted on the application at the top left corner in the application heading, as follows: "APPLICATION FOR EMERGENCY FOOD STAMPS FOR THE DISASTER BENEFIT PERIOD _____TO_____." Those dates were correctly inserted in writing ("9/18 TO 10/17") on Mushaw's application.

Following the group instruction and the applicants' completion of the application, the applicants met individually with an eligibility specialist. Mushaw met with eligibility specialist Danette Smith. Smith testified that, in her personal interviews, she reviewed the application, determined eligibility, and calculated the eligible applicant's benefits based on income, available monetary resources, and expenses incurred from the storm, as represented on the application by the applicant. Part II, question six, of the application asked, "Does your household have any cash or money in bank accounts that is not available for you to use because of the disaster?" Smith testified that, when asked about question six, she informed applicants that whatever money was "in [their] account *at this time*" was "available." On his application, Mushaw answered "Yes" to question six, representing that he had money in bank accounts not available because of the disaster. As shown on his bank statements, however, Mushaw had several thousand dollars in his checking and savings accounts at the time he applied for benefits, as well

as the time between the onset of the benefit period and the date he applied.  Smith also testified that Mushaw answered question six on the application—she did not answer the question for him.

DSS Investigator Michael Rawlings questioned Mushaw about his application during the DSS investigation.  Rawlings testified Mushaw initially explained that he declared his bank accounts "not available" because he did not have an ATM card and there was a "power failure" as a result of the storm.  Mushaw conceded, however, that he "could" write checks on his checking account.  For the period of September 12 through October 10, 2003, during which his balance did not fall below $4,345.78, Mushaw's checking account statement showed that the bank had processed twenty-three checks written on the account.  The subsequent monthly statement showed thirty checks written on the account.  Furthermore, Mushaw admitted that the credit union in which he maintained his savings account, with a branch located in the building where he worked, was open when he returned to work on Monday, September 22, 2003, following the storm on the previous Thursday.

In his testimony at trial, Mushaw did not claim that a power failure and the absence of an ATM card were the reasons he represented on his application that he had money in bank accounts not available because of the disaster.  Rather, he testified that he did not read the application; did not understand it; and no one explained it to him.  Mushaw further claimed "[he] didn't know what the benefit period was."  He admitted on cross-examination, however, that as an accountant advising someone who was completing the application, the disaster benefit period would be the "first thing" he would need to know to complete it.  Specifically as to his answer to Part II, question six, of the application, Mushaw testified that he just "answered the way [Smith] told [him] to answer it."

In Part V entitled "PENALTY WARNING," the application states, in part, that the applicant "MUST NOT: GIVE FALSE INFORMATION . . . TO GET FOOD STAMP

- 4 -

BENEFITS," and one who violates this provision "MAY BE FINED, IMPRISIONED OR BOTH." Part VI of the application, entitled "CERTIFICATION AND SIGNATURE," then states:

> I UNDERSTAND THE QUESTIONS ON THIS APPLICATION AND THE PENALTY FOR WITHHOLDING OR GIVING FALSE INFORMATION. MY RESIDENCE WAS WITHIN THE DISASTER AREA AT THE TIME THE DISASTER OCCURRED AND MY HOUSEHOLD IS IN NEED OF IMMEDIATE FOOD ASSISTANCE. THE INFORMATION I HAVE GIVEN IS CORRECT AND COMPLETE TO THE BEST OF MY KNOWLEDGE . . . .

Mushaw signed and dated the application beneath this certification, as required on the application.

The trial court found Mushaw guilty of knowingly making a false application in violation of Code § 63.2-502 based on his answer to Part II, question six. In announcing the verdict, the court stated it did not "credit his testimony." The court specifically concluded that "the money in [Mushaw's] bank accounts was available to him" during the disaster period and, "[i]n fact, he was using the money;" but that he nevertheless knowingly and falsely represented otherwise on his application.

## II. ANALYSIS

We reverse a trial court's factual finding only when it is unsupported by credible evidence or plainly wrong. Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 12 (2004). Thus, the only relevant inquiry is "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).

Code § 63.2-502 provides that "[a]ny person who knowingly makes any false application for public assistance . . . shall be guilty of perjury and, upon conviction therefor, shall be

- 5 -

punished in accordance with the provisions of § 18.2-434." "A well-accepted definition of 'knowingly' is 'an act . . . done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.'" United States v. Jones, 735 F.2d 785, 789 (4th Cir. 1984) (citation omitted).

In challenging his conviction on sufficiency of evidence grounds, Mushaw abandons any argument that his answer to Part II, question six, of the application was correct. Instead, he contends the Commonwealth failed to prove that he *knowingly* made a false application for benefits. More specifically, he contends that the term "available" in Part II, question six, "was not clearly defined either by [the social] workers or the application itself," and that his response was "attributable to mistake, accident or other innocent purpose." We disagree.

"Guilty knowledge need not be directly proved. It may be shown by circumstances." Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983) (citation and internal quotation marks omitted). Indeed, where "[g]uilty knowledge is an essential element of the offense as defined by the statute, . . . 'absent proof of an admission against interest, such knowledge necessarily must be shown by circumstantial evidence.'" Spitzer v. Commonwealth, 233 Va. 7, 9, 353 S.E.2d 711, 713 (1987) (quoting Lewis, 225 Va. at 503, 303 S.E.2d at 893) (internal brackets omitted); see also Parks, 221 Va. at 498, 270 S.E.2d at 759. "Circumstantial evidence[,] when sufficiently convincing, is entitled to the same weight as direct evidence." Riner v. Commonwealth, 268 Va. 296, 303-04, 601 S.E.2d 555, 558-59 (2004) (citations omitted); see also Hudson, 265 Va. at 512-13, 578 S.E.2d at 785.

Furthermore, "a fact-finder, having rejected a defendant's attempted explanation as untrue," as the trial judge did in this case, "may draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt. A false or evasive account is [thus] a circumstance . . . that a fact-finder may properly consider as evidence of guilty

knowledge." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) (citations omitted); see also Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004) (noting that the fact-finder may discount an accused's self-serving explanation as a mere effort at "lying to conceal his guilt").

Applying these standards, a rational fact finder could conclude from the evidence in this case that Mushaw was guilty of knowingly making a false application for benefits. The trial court, as trier of fact, credited the testimony of Jones, Smith and Rawlings and discredited Mushaw's testimony. As such, the evidence established Mushaw was well aware that the cash in his bank accounts was available for his use not only at the time he applied for benefits, but during the entire disaster benefit period. Furthermore, the circumstantial evidence supports the inference that Mushaw—an accountant working for DSS in its finance department and holding an MBA—knew his answer to Part II, question six, of the application was false. Accordingly, we affirm his conviction.

Affirmed.