COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and Senior Judge Bumgardner
Argued at Chesapeake, Virginia

UNPUBLISHED

DAVID ALLEN PETERS

v.        Record No. 1888-15-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RUDOLPH BUMGARDNER, III
NOVEMBER 15, 2016

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Ben Pavek, Assistant Public Defender, for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

The trial court convicted David Allen Peters of two counts of violating a protective order,

Code § 18.2-60.4.  It also found that he violated the terms of his suspended sentences on nineteen

misdemeanor convictions.  On appeal, the defendant maintains the evidence was insufficient to

prove that he was guilty of violating the protective order, and of violating the conditions of his

suspended sentences.  Finding no error, we affirm.

"On appeal, we will consider the evidence in the light most favorable to the Commonwealth,

as it prevailed in the trial court."  Whitehurst v. Commonwealth, 63 Va. App. 132, 133, 754 S.E.2d

910, 910 (2014).  "[W]e 'presume the judgment of the trial court to be correct' and reverse only if

the trial court's decision is 'plainly wrong or without evidence to support it.'"  Kelly v.

Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Davis v.

Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mary Horsley ended a fourteen-month romantic relationship with the defendant in July 2013. The next month she began receiving anonymous text messages, phone calls, and e-mails. Between August 2013 and March 2014, Horsley received approximately 1,000 text messages. She also received a "few hundred" phone calls at all hours of the day and night and approximately twenty insulting, harassing, and threatening e-mail messages. In addition, her son, her mother, and her best friend received insulting text messages. Her house suffered approximately $6,700 damage. The defendant would follow her sometimes as she took walks in her neighborhood, which made her feel "[v]ery uncomfortable and scared."

On March 26, 2014, Horsley obtained a two-year protective order against the defendant. He was prohibited from having any contact with Horsley or any of her family or household members. On August 26, 2014, the defendant pled guilty to nineteen charges of violating the order. He received an active jail sentence, but most of the sentences were suspended. After his release from jail, Horsley again began receiving anonymous text messages.

Horsley routinely stopped at a 7-Eleven store before going to work. On February 23, 2015, Horsley noticed a vehicle following her. When it pulled beside her, she recognized the driver was the defendant. She was scared. Two weeks later as Horsley was driving to work, she again noticed a vehicle behind her. It pulled up next to her at a stoplight, and then fell back when the light turned green. As she parked in the 7-Eleven parking lot, she saw the defendant slowly pull into the parking lot. They made eye contact, and the defendant then "sped up and drove through the gas pumps and back out the other side of the 7-Eleven lot." She was again scared.

Police investigated the matter and obtained a search warrant for the defendant's residence. They found receipts from the 7-Eleven store from the early morning of both February 23 and March 9, 2015. The defendant admitted to going to the 7-Eleven store both times. He testified he saw Horsley only the second time, but he immediately drove off and then he came back for gas.

The trial court found that the defendant was guilty of violating the protective order on February 23 and March 9, 2015 and of violating the terms of his previously suspended sentences. The trial court sentenced the defendant to twelve months in jail on both violations of the protective order charge and to the remaining 210 months on the nineteen previously suspended sentences. This appeal followed.

The defendant argues that the evidence was insufficient to prove that he was the person who followed Horsley on February 23 or March 9, 2015. However, Horsley testified that she was "100 percent" sure that the defendant was the person following her on February 23, 2015. She also said that he was following her on March 9, 2015, and the defendant admitted he saw her in the parking lot on that date.

The trial court had the opportunity to see and hear the witnesses. Horsley knew the defendant and was obviously capable of identifying him. At the conclusion of all of the evidence, the trial court stated, "I believe Ms. Horsley." "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). The trial court did not err in finding that the defendant was the person who followed Horsley on February 23 and March 9, 2015.

The defendant also argues that the Commonwealth failed to prove that his actions violated the protective order or was stalking. The protective order was issued pursuant to Code § 19.2-152.10, in order to prevent "acts of violence, force, or threat." Code § 19.2-152.7:1 defines "acts of violence, force, or threat," to include stalking. Stalking has three elements:

> (1) the defendant directed his or her conduct toward the victim on at least two occasions; (2) the defendant intended to cause fear or knew or should have known that his or her conduct would cause fear; and (3) the defendant's conduct caused the victim "to experience reasonable fear of death, criminal sexual assault, or bodily injury."

Stephens v. Rose, 288 Va. 150, 155, 762 S.E.2d 758, 761 (2014) (quoting Parker v. Commonwealth, 24 Va. App. 681, 685, 485 S.E.2d 150, 152 (1997) (decided under a former version of Code § 18.2-60.3 prohibiting stalking)).

The defendant directed his conduct at Horsley.  He sent her numerous text messages and e-mails.  He called her at all times of the day and night.  He pled guilty to nineteen misdemeanors.  Once the defendant was released from jail, the conduct resumed, and she identified him following her on February 23 and March 9, 2015.

"The mens rea element is satisfied if the evidence shows the defendant should have known his conduct would cause fear."  Id. at 156, 762 S.E.2d at 762.  Horsley already had obtained a protective order.  The defendant knew that she was afraid of him and did not want him to have contact with her.  "Evidence that the defendant received notice that his contacts were unwelcome may be sufficient to support a trial court's finding that the defendant should have known his continued contacts would cause fear."  Id.  The evidence proved that the defendant should have known that his actions caused Horsley to fear him.

Horsley testified that she was scared and afraid when she saw the defendant on February 23, 2015 and on March 9, 2015.  "A victim need not specify what particular harm she fears to satisfy the third element of stalking."  Id. at 157, 762 S.E.2d at 762.

At the conclusion of the evidence, the trial court ruled that the defendant "did, in fact, initiate contact which was in violation of the protective order of March 26, 2014, and that he did so with the intent to continue and reinitiate harassment and prohibit contact with Ms. Horsley."  It also found that Horsley was "in fear."

The evidence supports the trial court's finding that the defendant's acts amounted to stalking and violated the protective order.  Accordingly, we affirm.

Affirmed.