UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Huff, Russell and Malveaux
Argued at Lexington, Virginia


FURQAN ABDULAZIZ SHABAZZ

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0470-18-3                     JUDGE MARY BENNETT MALVEAUX
                                                         MARCH 12, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Elizabeth Hurt, Assistant Public Defender, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Furqan Abdulaziz Shabazz ("appellant") appeals his convictions for statutory burglary, in

violation of Code § 18.2-91, and petit larceny, in violation of Code § 18.2-96.  He argues the trial

court erred in denying his motion to strike and convicting him because the evidence was

insufficient to prove his intent to commit larceny and that a larceny occurred.  For the reasons

that follow, we affirm appellant's convictions.

I.  BACKGROUND

"Under familiar principles of appellate review, we will state 'the evidence in the light

most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'"

Chavez v. Commonwealth, 69 Va. App. 149, 153 (2018) (quoting Sidney v. Commonwealth, 280

Va. 517, 520 (2010)).

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Elsie Elaine Stewart Harper was injured in a car accident in April 2016. After being hospitalized for her injuries she spent several weeks in a rehabilitation facility. During that time, Harper's sister, Diane Williams, frequently visited Harper's home to collect the mail and check on the house.

On June 22, 2016, Williams entered Harper's home and saw that a light was on in the bathroom. Williams had not left the light on when she had last visited the house four days earlier. In the bathroom, Williams noticed that the trash can liner and a towel were missing.

Williams discovered further anomalies when she inspected the rest of the home. A side door, which Williams always locked at the end of her visits, was unlocked. The rug beside Harper's bed was "crumpled up" and "scattered around." Windows in two rooms at the back of the house—a laundry room and a "junk room"—were broken. Further, doors between the junk room and the laundry, and between the laundry and the kitchen, had been broken open or kicked in. Williams also noticed blood on the door between the laundry and the kitchen. The blood had not been there before.

Williams reported the break-in to the police. Later that day, she saw appellant in the neighboring yard. Appellant, whose mother was Harper's next-door neighbor, had a bandage on his arm. Appellant had visited the hospital the day before and received stitches for a cut to his right leg.

Police collected a sample of the blood found in Harper's home. A forensic scientist with the Virginia Department of Forensic Science developed a DNA profile from the sample. After searching for the profile in the Virginia DNA Data Bank, she certified that the profile was consistent with appellant. The same forensic scientist later analyzed a buccal swab collected from appellant and certified that he could not be eliminated as a contributor of the profile developed from the blood sample.

Harper returned home approximately one week after Williams discovered the break-in and checked to see if anything was missing from the house. Harper told police that she had set aside $50 for lawn care and that the money was missing from her dresser.

Appellant was indicted for statutory burglary with the intent to commit larceny, in violation of Code §§ 18.2-90 and -91. He was also charged by warrant with petit larceny of U.S. currency, in violation of Code § 18.2-96.

At trial, Harper testified that the money had been "laying on [her] chest of drawers, $50.00 that wasn't there" when she returned home. The money had not been in an envelope and was "cash money laying there" just inside the bedroom door, which was next to the bathroom. Harper stated that she had placed the money on the chest of drawers when she "got [her] check" at the beginning of April and that it was to be used to pay the man who mowed her lawn. During her time away from home, Harper had arranged for the man to be paid by a friend whom she would later reimburse.

In addition, Harper also testified, without objection, that she "always kept money on [her] chest of drawers to pay the man who did [the] mowing." She said that when she would receive her check, she would "lay [the money] there for the month" and that she "usually just [laid] the cash up there." On cross-examination, when counsel for appellant asked Harper if "the reason you think the cash . . . was there is because that's just something you would always do at the beginning of the month was put cash there," Harper replied, "I keep it there."

At the conclusion of the Commonwealth's case, appellant moved to strike the evidence. He argued there was no evidence of any larcenous intent or theft of any money from Harper's home, because Harper only "thinks that [the money] might have been there." The trial court

denied the motion and denied appellant's renewed motion to strike at the conclusion of the evidence.[1]

The trial court found the evidence sufficient to establish that $50 was missing from Harper's home and stated that it was "making an adjudication of guilt as to both offenses."[2]  It then directed the parties to submit briefs addressing whether Harper's testimony about the money was based upon her specific recollections or upon her habits and routines.  The court also asked the parties to address whether habit and routine evidence is admissible in criminal cases.  At the sentencing hearing, the court heard argument on these issues and reviewed an audio recording of Harper's testimony.  The court found that Harper was "a very credible and very articulate witness" and reaffirmed its prior rulings.  This appeal followed.

## II.  ANALYSIS

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  White v. Commonwealth, 68 Va. App. 111, 118 (2017) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)).  "We do not 'substitute our judgment for that of the trier of fact.'  Rather, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

---

[1] Although the trial transcript does not indicate that appellant renewed his motion to strike or that the motion was denied, the trial court stated in its conviction order that "[a]t the conclusion of all of the evidence, [appellant] renewed [his] motion to strike . . . on the same grounds, which motion was overruled and exception was noted."  Because "[i]t is the firmly established law of this Commonwealth that a trial court speaks . . . through its written orders," Davis v. Mullins, 251 Va. 141, 148 (1996), and "those orders are presumed to accurately reflect what transpired" at trial, McBride v. Commonwealth, 24 Va. App. 30, 35 (1997), we conclude that appellant's motion to strike was properly renewed and denied.

[2] The trial court also found that appellant had violated the terms of his probation and revoked three months of appellant's previously suspended sentence for grand larceny.  Appellant does not appeal the revocation.

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Ramsey v. Commonwealth, 65 Va. App. 694, 697 (2015) (citation omitted) (first quoting Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002); then quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Burrous v. Commonwealth, 68 Va. App. 275, 279 (2017) (quoting Kelly, 41 Va. App. at 257-58). In conducting our analysis, we are mindful that "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." Miller v. Commonwealth, 64 Va. App. 527, 536 (2015).

Appellant does not challenge the sufficiency of the evidence that he was the individual who unlawfully entered Harper's home.[3] Rather, he argues simply that the evidence was insufficient to prove that a larceny occurred or that he intended to commit larceny. Appellant contends that Harper's testimony that she left $50 on her chest of drawers and that it was gone after the break-in was not based upon Harper's specific recollections, but upon her recollection of her habit and routine of leaving money for lawn care on the chest of drawers. Such testimony, appellant argues, was inadmissible in a criminal trial and, in the alternative, was insufficient to prove that the money had been there and that a larceny occurred.

"Larceny is the wrongful taking of the goods of another without the owner's consent and with the intention to permanently deprive the owner of possession of the goods." Traish v. Commonwealth, 36 Va. App. 114, 135 (2001) (quoting Bright v. Commonwealth, 4 Va. App.

---

[3] Appellant conceded at trial that someone broke in to Harper's home and stated at oral argument that he did not contest the sufficiency of the evidence that he entered Harper's house.

248, 251 (1987)).[4] Statutory burglary, in turn, is the commission of any act enumerated in Code § 18.2-90, including breaking and entering with the intent to commit larceny. Code § 18.2-91. "'Proving intent by direct evidence often is impossible.' Therefore, intent, '[l]ike any other element of a crime, . . . may be proved by circumstantial evidence.'" Kelley v. Commonwealth, 69 Va. App. 617, 628 (2019) (alteration in original) (citation omitted) (quoting Adams v. Commonwealth, 33 Va. App. 463, 470-71 (2000)). Further, "when an unlawful entry is made into a dwelling of another, the presumption is that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances." Vincent v. Commonwealth, 276 Va. 648, 653 (2008) (quoting Ridley v. Commonwealth, 219 Va. 834, 836 (1979)). Where, as here, there is a "prosecution of burglary with intent to commit larceny, the [Commonwealth] must prove the specific intent to steal beyond a reasonable doubt." Jones v. Commonwealth, 3 Va. App. 295, 299 (1986) (quoting Ridley, 219 Va. at 836).

We are not persuaded by appellant's sufficiency arguments with respect to larceny and intent to commit larceny. Harper, whom the trial court found to be very credible, testified that before she was injured she placed $50 on top of the chest of drawers in her bedroom. The money was set aside for lawn care and was not in an envelope; it was "cash money laying there." When Harper returned home after appellant's break-in, the money was gone. Thus, regardless of any additional testimony by Harper about her habits and routines—evidence to which appellant did not object at trial—Harper testified to her specific recollection of leaving $50 in a particular place for a particular purpose and finding it was gone after the break-in. Further, Harper

---

[4] See also Code § 18.2-96(2) (providing, in pertinent part, that petit larceny is the offense of committing "simple larceny not from the person of another of goods and chattels of the value of less than $500"). The threshold for elevating petit larceny to grand larceny was $200 at the time of the instant case and was increased to $500 when Code § 18.2-96 was amended in 2018. See 2018 Va. Acts chs. 764, 765.

specifically told police that she had set aside $50 to pay for lawn care and that the money was missing when she returned home. Viewing this evidence in the light most favorable to the Commonwealth, a rational trier of fact could have found that Harper left $50 in cash in her bedroom for lawn care and that after appellant broke in to Harper's home, he took the money without Harper's consent and with the intent to permanently deprive her of the money. Further, appellant's unlawful entry into Harper's home supports the inference that his entry was made for an unlawful purpose. See Vincent, 276 Va. at 653. In turn, a rational trier of fact could have concluded from the money's disappearance that the purpose or intent of appellant's unlawful entry was to steal from Harper. Thus, the evidence was sufficient to convict appellant both for committing petit larceny of currency from Harper and for burglarizing Harper's home with larcenous intent.

## III. CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to convict appellant for statutory burglary, in violation of Code § 18.2-91, and petit larceny, in violation of Code § 18.2-96, and consequently affirm appellant's convictions.

Affirmed.