UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Fulton and White
Argued by videoconference.


STEVEN RANDALL THOMASON

MEMORANDUM OPINION[*] BY
v.        Record No. 0624-24-3          JUDGE JUNIUS P. FULTON, III
                                        FEBRUARY 11, 2025

RACHEL CARAMOAN THOMASON


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

James C. Martin (Martin & Martin Law Firm, on brief), for
appellant.

No brief or argument for appellee.


The Circuit Court of the City of Danville awarded Rachel Thomason ("Ms. Thomason")

a two-year protective order. The protective order prohibits any contact between Ms. Thomason

and her ex-husband, Steven Thomason ("Mr. Thomason"), and states that Mr. Thomason shall

refrain from committing any "acts of violence, force, or threat or criminal offenses that may

result in injury to" Ms. Thomason's person or property. Mr. Thomason claims that the circuit

court erred in granting the protective order. For the following reasons, we affirm.

BACKGROUND

Mr. Thomason appeals an order of the Circuit Court of the City of Danville, which

reversed the decision of the Danville Juvenile and Domestic Relations District Court denying

Ms. Thomason a protective order in this case. At the hearing on March 15, 2024, Ms. Thomason

testified that she is the ex-wife of Mr. Thomason and that she and Mr. Thomason divorced in

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

October 2022.  On Christmas Eve, 2023, she was driving home when a vehicle without lights on followed her when it was dark.  Mr. Thomason was the driver, and he blocked her driveway, got out of his truck, walked over to her vehicle, and tried to open the door.  After a couple minutes, she called 911 and Mr. Thomason left before the police arrived.

When asked if this was the only incident, Ms. Thomason stated that Mr. Thomason had called her and left voicemails saying things like "I love you" and "I miss you," plus emails "almost 24/7."

After the juvenile court hearing on the protective order in February 2024, Mr. Thomason sent Ms. Thomason a package with flowers, balloons, cosmetics, and a photo album of their pictures.  Ms. Thomason further stated that, since February, Mr. Thomason has continued to leave voicemails and send emails, that she filed for the protective order because she wanted him to stop, and because she wants no contact with him.

When asked about her specific concerns, she mentioned "stalking," that she was afraid, that she lived alone, that she had no family nearby, and that once on third shift she saw a vehicle pull up beside her apartment with no lights, that Mr. Thomason was the driver, that she was scared, and she got into her car immediately.

When asked if there had been physical violence during their relationship, she stated that it was not physical abuse but emotional abuse.  A non-threatening collection of emails and texts was admitted into evidence without objection.

Ms. Thomason indicated that she had banned Mr. Thomason from her property in writing.  She then clearly banned Mr. Thomason from trespassing on her property, in open court, in his presence, and in the presence of the judge and defense counsel.

On cross-examination, Ms. Thomason acknowledged that she had called Mr. Thomason in 2023.  When asked if they discussed Mr. Thomason getting an apartment for her, she

responded that he had offered her a house, but that she declined.  Mr. Thomason presented no evidence but made a motion to strike on the ground that there was no evidence of reasonable fear by or danger to Ms. Thomason, merely of "unwanted contact through flowers and similarly friendly items."

The circuit court denied the motion to strike and issued a protective order for two years, over the exception and objection of the defense.  The circuit court stated that Ms. Thomason had reason to fear because Mr. Thomason was "creepy as all get-out" and dangerous.  On March 19, 2024, the trial court denied a motion for reconsideration.  Mr. Thomason appeals.

ANALYSIS

Mr. Thomason asserts that there was "absolutely no evidence" supporting the circuit court's finding that he committed an act of violence, force or threat justifying the issuance of the protective order.  He suggests that because Ms. Thomason confirmed he has never physically harmed her or that he ever threatened to assault her, her "unsupported allegation of fear" was "totally groundless."  We disagree.

"On appeal, we construe the evidence in the light most favorable to [Ms. Thomason], the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom."  *Wright v. Wright*, 38 Va. App. 394, 398 (2002).  "[W]e 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc) (quoting *Davis v. Commonwealth*, 39 Va. App. 96, 99 (2002)).

Code § 19.2-152.10 authorizes a circuit court to issue a protective order if the petitioner proves by a preponderance of the evidence "that [he or she] is or has been, within a reasonable period of time, subjected to an act of violence, force, or threat."  Code §§ 19.2-152.9(D) and -152.10(A)(ii).  An "[a]ct of violence, force, or threat" is defined by Code § 19.2-152.7:1 as

"any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." The statute explicitly states that "[s]uch act includes, but is not limited to, any forceful detention, stalking, criminal sexual assault . . . or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." *Id.* The criminal offense of stalking is described in Code § 18.2-60.3(A) as:

> Any person . . . who on more than one occasion engages in conduct, either in person or through any other means, including by mail, telephone, or an electronically transmitted communication, directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's family or household member . . . .

"Three elements [are] necessary to prove stalking under this statute." *Stephens v. Rose*, 288 Va. 150, 155 (2014). First, the evidence must show that the defendant "directed his or her conduct toward the victim on at least two occasions;" second, that the defendant "intended to cause fear or knew or should have known that his or her conduct would cause fear;" and third, that the defendant's conduct "caused the victim 'to experience reasonable fear of death, criminal sexual assault, or bodily injury.'" *Id.* (quoting *Parker v. Commonwealth*, 24 Va. App. 681, 685 (1997) (decided under a former version of Code § 18.2-60.3)). "Physical harm or threatened physical harm to a victim is not a necessary prerequisite to the granting of a protective order under Code § 19.2-152.10, because Code §§ 19.2-152.7:1 and -152.9(D) provide that such an order may be premised upon other acts, 'includ[ing], but . . . not limited to . . . stalking.'" *Id.*

The written statement of facts provided to us on appeal, together with the collection of emails and texts admitted at the hearing, support the circuit court's issuance of the protective order, as they indicate that Mr. Thomason engaged in what Ms. Thomason expressly described as stalking. With respect to the first element of stalking, there is no question that Mr. Thomason directed his

conduct toward Ms. Thomason on at least two occasions. The written statement of facts and the accompanying exhibits show that Mr. Thomason was emotionally abusive during the parties' marriage and that after they divorced in October 2022, he continued to contact Ms. Thomason throughout 2023 by excessively calling her on the phone, by leaving repeated voicemails to declare his undying love for her, by claiming that he missed her, and by sending emails to her "almost 24/7." Indeed, the emails and texts admitted into evidence at the hearing, albeit "non-threatening," supported Ms. Thomason's description of the excessive nature of Mr. Thomason's attempts to, as he described it, "get [her] back." He even contacted Ms. Thomason's sister by Facebook to say that he was "desperate," that he needed her "help," and that he was "depressed" over the divorce. He knew where Ms. Thomason lived and went to her apartment unannounced and uninvited at least twice, startling her both times. On one of those occasions, Ms. Thomason made it clear by calling 911 that she did not wish to be pursued.

The record also shows that Mr. Thomason knew or should have known that his conduct would cause Ms. Thomason to feel fear. Mr. Thomason's actions were not limited to email and the telephone. According to Ms. Thomason, he followed her home without his headlights on at around 5:30 a.m. one morning, while it was still dark outside. He then blocked her driveway before approaching her vehicle and attempting to open the door. When she called 911 he left before the police arrived. On another occasion, Ms. Thomason observed Mr. Thomason again at her apartment complex with his headlights turned off as he drove by her apartment and turned around. Then, in February 2024, *following the juvenile court hearing on Ms. Thomason's initial request for a protective order*, Mr. Thomason, who by then was well aware that Ms. Thomason wanted no further contact with him, sent her "a package of flowers, balloons, cosmetics and a photo album (with their pictures)," and he continued to try to contact her both by phone and email even though she had blocked him. "Evidence that the defendant received notice that his contacts were

unwelcome may be sufficient to support a trial court's finding that the defendant should have known his continued contacts would cause fear." *Stephens*, 288 Va. at 156. Moreover, attempts at contact after being given actual notice that a person does not want to be contacted "shall be prima facie evidence that the person intended to place that other person, or reasonably should have known that the other person was placed, in reasonable fear of death, criminal sexual assault, or bodily injury . . . ." Code § 18.2-60.3. Based on the facts presented here, we cannot say that the circuit court lacked evidentiary support for a conclusion that Mr. Thomason's conduct caused Ms. Thomason to experience fear of bodily harm.

The third element of stalking requires that the defendant's conduct cause the victim to experience "reasonable fear of death, criminal sexual assault, or bodily injury." Code § 18.2-60.3(A). The standard is an objective one. *See Parker*, 24 Va. App. at 688 ("By qualifying the word fear with the word 'reasonable,' the General Assembly intended to limit the reach of Code § 18.2-60.3 to conduct that would render an ordinary, reasonable person in the victim's circumstances in fear for his or her physical well-being."). However, "[a] victim need not specify what particular harm she fears to satisfy the third element of stalking." *Stephens*, 288 Va. at 157.

According to the written statement of facts, Ms. Thomason testified that Mr. Thomason's actions scared her. Her assertions of fear are corroborated by her attempts at banning Mr. Thomason from her property, both in writing and in open court, by the fact that she apparently had him charged with stalking and later blocked him from email and phone access, and by her repeated attempts at seeking a protective order both in the juvenile and circuit courts. Contrary to Mr. Thomason's contention, Ms. Thomason's assertion of fear does not appear "totally groundless." Mr. Thomason's actions would make any reasonable person feel afraid. Indeed, the circuit court heard her testimony, considered the exhibits, and concluded that she "had reason to fear" Mr. Thomason's "dangerous" and "creepy as all get-out" behavior. The record supports that

finding.  Thus, we cannot conclude that the circuit court erred in granting Ms. Thomason a protective order.

CONCLUSION

Mr. Thomason's conduct was clearly directed at Ms. Thomason over her repeated attempts to communicate the fact that she no longer wanted his attention.  Ms. Thomason lived alone and had no family in the area for support, and, at the hearing in the circuit court, Ms. Thomason "mentioned stalking" in addressing her "specific concerns" and her reasons for requesting the court's protection.  Although Mr. Thomason was not charged in the circuit court with stalking, his behavior met the elements of the stalking statute.  For that reason, the circuit court acted appropriately in granting the protective order.  The circuit court's judgment is affirmed.

*Affirmed.*