COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Senior Judge Clements
Argued at Richmond, Virginia


LARRY KEITH HARMAN, S/K/A
  LARRY KEITH HARMON
                                                        MEMORANDUM[*] OPINION BY
v.        Record No. 1925-07-3                   JUDGE JEAN HARRISON CLEMENTS
                                                            FEBRUARY 17, 2009
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                                Thomas H. Wood, Judge

              Joseph A. Sadighian, Senior Assistant Appellate Defender, for
              appellant.

              Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
              Attorney General, on brief), for appellee.


       Larry Keith Harman (appellant) was convicted in a jury trial of assault and battery of a

law enforcement officer in violation of Code § 18.2-57(C).  On appeal, appellant contends the

trial court erred 1) in denying his motion to suppress blood test evidence; 2) in finding the

evidence sufficient to sustain his conviction; 3) in denying his motion *in limine* wherein he

sought to preclude admission of the blood test results; 4) in overruling his objection to the

prosecution's closing argument; and, 5) in denying his motion for a new trial.  Finding no error,

we affirm the trial court's judgment and appellant's conviction.

                                      I.  BACKGROUND

       We view the evidence in the light most favorable to the Commonwealth, granting to it all

reasonable inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066,

---

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

1067, 407 S.E.2d 47, 48 (1991). We "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Blow v. Commonwealth, 52 Va. App. 533, 536, 665 S.E.2d 254, 256 (2008) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). So viewed, the evidence shows that on December 5, 2006, Deputy Michael Roane, of the Augusta County Sheriff's Office, appeared in the Augusta County General District Court to testify regarding traffic tickets he had issued to appellant. Those charges were dismissed. As Deputy Roane prepared for his next case, appellant approached him to shake hands. Deputy Roane thought this was "a little unusual," but there was "nothing . . . particular" in the handshake itself that was strange. During the time their right hands were clasped, Deputy Roane saw appellant give a "wink and a nod and kind of smirk," which Roane found "very unusual." Appellant left immediately thereafter.

Seconds after the handshake, Deputy Roane was "shocked and dismayed" to discover that his palm was covered in what he had "no doubt" was blood, enough that it covered his hand halfway up and in between his fingers. A bailiff gave Deputy Roane paper towels and alcohol to clean his hand. Later, Deputy Roane tried unsuccessfully to locate appellant at the courthouse.

The bailiff who witnessed the handshake corroborated Deputy Roane's account, testifying that "they shook hands . . . [and appellant] like smiled or something, . . . and [after appellant had walked out] I looked at Deputy Roane and his face was going like 'wow,' . . . and he had blood all over his hand." The bailiff then testified that he got Deputy Roane "a wet paper towel and some dry paper towels . . . [and] hand . . . sanitizer." Officer Brian Jenkins also corroborated Deputy Roane's account. He testified that he "didn't actually see the completion of the handshake, but [did see that during the handshake appellant] nodded his head and winked at [Deputy Roane]."

That afternoon, Roane called appellant at his place of business, and appellant agreed that he would come in that afternoon to discuss what happened. Appellant later cancelled that appointment. Appellant resisted all of Deputy Roane's subsequent efforts by phone to set up a meeting, saying he was under no obligation to cooperate. Deputy Roane testified that the early phone contacts with appellant were "very casual," but that in later calls appellant would "cuss at" Deputy Roane and "hang up on" him. Deputy Roane's sense of unease was not "overwhelming" until the later phone calls. In one conversation on the day after the initial phone calls and in the context of whether appellant had any blood borne diseases, appellant stated that Deputy Roane "should probably go get checked out if he wants." When appellant made this statement, Deputy Roane became "pretty upset."

Prior to the initiation of any criminal proceeding in this case, the Commonwealth moved the trial court to order that appellant give a blood sample in order that it might be tested for blood borne contagion. Explicitly relying on Code § 32.1-45.1(E), the trial court so ordered on December 6, 2006, instructing that the results be released to Deputy Roane. Appellant did not challenge the validity of the order at any time prior to its execution. Rather, after consulting with an attorney, appellant presented himself on December 7, 2006, and a blood sample was taken. At the same time, an incision was observed on appellant's left palm, and a photograph of his hands was taken.

Appellant was indicted on April 23, 2007. By pretrial motion orally argued on May 24, 2007, appellant sought suppression of any evidence resulting from the sample based on the terms of Code § 32.1-45.1(E). The trial court denied the motion. On July 20, 2007, the blood sample tested positive for hepatitis C antibodies. From the results of this test it was determined to a degree of medical certainty that appellant was "potentially infectious."

Appellant was tried before a jury on July 27, 2007. The results of the blood test were offered into evidence, and appellant objected on previously raised grounds, and also on grounds of relevancy. The trial court overruled the objection, and admitted the test results into evidence. The photograph of appellant's hands was also admitted.

Appellant testified in his own defense that he had no malice against the officer and that he had no inkling he might have hepatitis C at the time he shook Deputy Roane's hand. He also testified that he did not notice anything on his hands before or after the handshake.

Trial lasted a single day. At the conclusion of the evidence, closing arguments commenced. At one point, appellant objected to the prosecution's statement that appellant "has not given you an explanation of what that red substance [in Deputy Roane's hand was]." The judge overruled the objection, noting that while "there is no burden on the defendant to produce any evidence," considering the evidence presented and the arguments made by the defense, the prosecution's statement was "a fair comment." Appellant made no request for a cautionary instruction or mistrial, and closing argument continued.

At the end of closing argument, the jury deliberated and returned a verdict of guilt the same day, July 27, 2007. Appellant was sentenced to the mandatory minimum sentence of six months in jail. On August 6, 2007, appellant's counsel received a call from Susan Johnson, a local lawyer who had been in the general district court and who had witnessed the handshake. Appellant stated that he was not previously aware that she had been present. Appellant informed the trial court that Johnson was guardian *ad litem* for appellant's daughter and that she knew appellant in that capacity, though they were "always on opposite sides." Appellant proffered that Johnson would testify that there was nothing "sinister" or "unusual" about the handshake and that the officer simply wiped off his hand and continued with his work "as though nothing had

happened."  Based on this information, appellant moved the court for a new trial pursuant to Rule 3:15.  The trial court denied the motion.

This appeal followed.

## II.  SUPPRESSION OF THE EVIDENCE

Code § 32.1-45.1(E) reads in its entirety as follows:

> Whenever any law-enforcement officer is directly exposed to body fluids of a person in a manner which may, according to the then current guidelines of the Centers for Disease Control, transmit human immunodeficiency virus or hepatitis B or C viruses, the person whose body fluids were involved in the exposure shall be deemed to have consented to testing for infection with human immunodeficiency virus or hepatitis B or C viruses.  Such person shall also be deemed to have consented to the release of such test results to the law-enforcement officer who was exposed.  In other than emergency situations, it shall be the responsibility of the law-enforcement officer to inform the person of this provision prior to the contact which creates a risk of such exposure.

Appellant contends that the trial court erred when it ordered appellant to submit to a blood test because Code § 32.1-45.1(E) does not authorize the taking of a blood sample under the circumstances present in this case.  Specifically, appellant argues that there was no "emergency situation" when the handshake occurred that would absolve the officer of responsibility previously to inform appellant of the informed consent provision.  Appellant did not challenge the validity of the order prior to the execution of its terms.  Instead, he argued at trial and again on appeal that the evidence which resulted from the blood sample should have been suppressed pursuant to the exclusionary rule.  We disagree.

"[T]he exclusionary rule is a judicially created remedy designed to deter future unlawful police conduct."  Elkins v. United States, 364 U.S. 206, 217 (1960).

> Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.  As with any remedial device, the application of the rule has been restricted to those areas

- 5 -

where its remedial objectives are thought most efficaciously
served.

United States v. Calandra, 414 U.S. 338, 348 (1974). "'[A]ny extension of the [exclusionary]

rule beyond its traditional applicability in criminal proceedings makes sense only if use of the

remedy would deter or would likely deter police misconduct.'" Anderson v. Commonwealth,

251 Va. 437, 440, 470 S.E.2d 862, 863 (1996) (quoting United States v. Winsett, 518 F.2d 51,

53-54 (9th Cir. 1975)).

In United States v. Leon, 468 U.S. 897, 916, 918 (1984), the Supreme Court again

recognized that suppression of evidence is an appropriate remedy "only in those unusual cases in

which exclusion will further the purposes of the exclusionary rule," and that purpose is not to

punish errors of the courts, but to deter police misconduct. The Court therefore held that where

police rely in good faith on a court document that is not "facially deficient" to deprive a party of

a fundamental right, suppression is not a proper remedy. Id.; see also Corey v. Commonwealth,

8 Va. App. 281, 289, 381 S.E.2d 19, 23 (1989) (holding that suppression of evidence discovered

as a direct result of an arrest warrant unsupported by probable cause was inappropriate "because

of the officer's good faith reliance on the magistrate's [error]").

Assuming without deciding that Code § 32.1-45.1(E) does not authorize blood tests under

these circumstances, application of the exclusionary rule is not the proper remedy. Appellant has

made no allegation of police misconduct relevant to this appeal; rather, those who took the blood

sample inarguably relied on a circuit court order the validity of which they had no cause to

doubt. Thus, even if appellant is correct that the circumstances of this case do not meet the

standard set forth in Code § 32.1-45.1(E), that error is reflected in the trial court's order, not the

conduct of police who complied therewith. Suppression here will not remedy or deter police

misconduct, and cannot serve the purposes of the exclusionary rule. See Leon, 468 U.S. at

919-20 (recognizing that "where the officer's conduct is objectively reasonable," suppression

will not further the ends of the exclusionary rule). The exclusionary rule was inapposite here, and the trial court therefore did not err when it refused to suppress the blood sample evidence.

Appellant nevertheless argues that, because the Commonwealth never argued the inapplicability of the exclusionary rule when it prevailed before the trial court, the doctrine of waiver should operate to preclude this result. We are unaware of any authority to support the proposition that legal principles not raised by the prevailing party in the trial court are susceptible to waiver so as to preclude an appellate court's judgment in reliance thereon. See Cross v. Commonwealth, 49 Va. App. 484, 494, 642 S.E.2d 763, 768 (2007) (recognizing that Rule 5A:18 applies only to arguments offered as a basis for reversal). We therefore reject this argument.

Thus, having found that suppression under the exclusionary rule is an inappropriate remedy to the alleged error, we need not consider whether the trial court misinterpreted the provisions of Code § 32.1-45.1(E). See Corey, 8 Va. App. at 289, 381 S.E.2d at 24 (concluding that where appellant seeks to have the appellate court apply the exclusionary rule on particular grounds, a ruling that suppression of the evidence is not appropriate will constitute an independent basis on which to affirm).

### III. SUFFICIENCY OF THE EVIDENCE

Appellant argues that the evidence was insufficient to convict him of assault and battery of a law enforcement officer because the Commonwealth failed to establish the requisite intent.

"When a case, civil or criminal, is tried by a jury . . . the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. We recognize that "the credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20

- 7 -

Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted). When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson, 443 U.S. at 319).

"If any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a law-enforcement officer . . . engaged in the performance of his public duties as such, such person shall be guilty of a Class 6 felony . . . ." Code § 18.2-57(C). "A battery is an unlawful touching of another. It is not necessary that the touching result in injury to the person. Whether a touching is a battery depends on the intent of the actor, not on the force applied." Adams v. Commonwealth, 33 Va. App. 463, 468, 534 S.E.2d 347, 350 (2000); see Gilbert v. Commonwealth, 45 Va. App. 67, 71, 608 S.E.2d 509, 511 (2005) (holding that "deeply offensive" physical contact will constitute an "infliction of bodily harm" so long as intent is sufficiently proven). "'The question of [appellant's] intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the jury.'" Hughes v. Commonwealth, 18 Va. App. 510, 519, 446 S.E.2d 451, 457 (1994) (en banc) (quoting Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 849 (1951)) (alteration in original).

In Gilbert, we affirmed a conviction under Code § 18.2-57(C) for spitting on a law-enforcement officer where the accused acted "in a rude, insolent or angry manner." Gilbert,

45 Va. App. at 71, 608 S.E.2d at 511. In the case at bar, appellant contends that—unlike Gilbert— there was "no evidence tend[ing] to prove that Harman had any motive to cause apprehension or harm to Roane, and no evidence existed to show that Harman was angry with Roane." On that basis, appellant concludes that the evidence will not support conviction. We disagree.

With respect to the mental state of appellant, the prosecution was under no obligation to prove appellant's motive, but only his intent. The jury found that the evidence was sufficient to demonstrate the requisite intent, and we will affirm so long as *any* rational fact finder could so have found. See Kelly, 41 Va. App. at 257, 584 S.E.2d at 447; Adams, 33 Va. App. at 468, 534 S.E.2d at 350.

> Proving intent by direct evidence often is impossible. Like any other element of a crime, it may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it. Circumstantial evidence of intent may include *the conduct* and statements of the alleged offender, and "the finder of fact may infer that [the accused] intends the natural and probable consequences of his acts."

Adams, 33 Va. App. at 470-71, 534 S.E.2d at 351 (quoting Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc) (additional citations omitted)) (emphasis added).

Here, Deputy Roane, the officer who had summoned appellant into district court, testified that appellant smirked and winked after he initiated the handshake, and other witnesses corroborated Deputy Roane's testimony. After withdrawing from the handshake, Deputy Roane discovered blood on the palm and fingers of his right hand in a quantity sufficient to seep into the area between his fingers. Later, appellant was uncooperative with Deputy Roane's attempts to alleviate his concerns arising from these facts. After the issuance of the order, it was discovered that appellant had an incision on his left palm.

From this evidence, the fact finder could reasonably infer that the substance on Deputy Roane's hand was appellant's blood transferred during the handshake, that the blood's source was the incision on appellant's hand, and that the blood flow was fairly substantial. The fact finder could likewise infer that appellant must have been aware of the incision and that he should likewise have been aware of the copious blood flow, especially since its substantial wetness was transferred at some point prior to the handshake from appellant's left hand to his right hand. And while appellant testified to the contrary, the fact finder was permitted to reject his testimony, and to conclude that appellant was aware that the handshake he initiated would convey his blood to Deputy Roane's right hand. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (citation omitted)). Accordingly, after viewing all the evidence in its entirety, the trial court was not plainly wrong to find that it was appellant's intention—whatever his motive—to do so.

## IV. RELEVANCY OF THE EVIDENCE

Appellant contends that the trial court erred when it denied his motion *in limine* seeking to preclude the results of the blood sample contagion test. He argues those results were irrelevant to the issue of whether or not appellant *knew* he likely carried hepatitis C at the time he shook Deputy Roane's hand.[1] We disagree.

---

[1] In the alternative, appellant argues that whatever the probative value of the evidence, it is outweighed by its prejudicial effect. However, he did not advance this particular argument in the trial court. Pursuant to Rule 5A:18, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc) (citations omitted). And while there are exceptions to the waiver provisions of Rule 5A:18, appellant does not ask us to apply them, and we will not consider the issue *sua sponte*. Id. at 761, 589 S.E.2d at 448. This argument is therefore defaulted.

"Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted." Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 824 (1986). Evidence is relevant when it has a "logical tendency, however slight, to prove a fact at issue in the case." Winston v. Commonwealth, 268 Va. 564, 596, 604 S.E.2d 21, 39 (2004). "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Bottoms v. Commonwealth, 22 Va. App. 378, 384, 470 S.E.2d 153, 156 (1996).

"[A] person cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'" Gilbert, 45 Va. App. at 71, 608 S.E.2d at 512 (quoting Davis v. Commonwealth, 150 Va. 611, 617, 143 S.E. 641, 643 (1928)). And while "an act that involved physical contact [that was also] deeply offensive" will satisfy the requirement of "bodily harm," id., the presence of a contagion borne by bodily fluid will permit the fact finder to conclude that otherwise innocuous contact—as well as more objectionable contact—has been rendered quite harmful, see United States v. Sturgis, 48 F.3d 784, 787-88 (4th Cir. 1995) (holding that it was within the discretion of the fact finder to regard HIV infection as a factor sufficient to aggravate a simple assault for intentional biting to assault with a deadly weapon).

Recognizing that the mere presence of a blood borne contagion cannot elevate a handshake to a battery in the absence of scienter and intent, appellant argues that the results of appellant's blood test are irrelevant to the issue of whether appellant was aware that his blood was hepatitis C positive. This argument is without merit. Indubitably, in order for appellant to be aware that his blood was positive for hepatitis C antibodies, it is necessary that it actually be so. Thus, particularly in the absence of direct evidence that appellant had prior notice of his condition, the fact that appellant's blood tested positive for hepatitis C antibodies is manifestly

relevant to prove that appellant was or should have been aware that his blood was potentially hazardous to Deputy Roane at the time of their handshake. Moreover, the results of the blood test, when combined with appellant's statement to the deputy that he "should probably go get checked," may tend to convince a reasonable fact finder that the handshake was calculated to cause anxiety or harm to Deputy Roane through the transfer of tainted blood.

For these reasons, the blood evidence here has a "logical tendency" to demonstrate appellant's intent to harm or cause anxiety in Deputy Roane. Because intent was at issue in this case, see Adams, 33 Va. App. at 470-71, 534 S.E.2d at 351, we cannot say that it was an abuse of the trial court's discretion to deny appellant's motion and to admit the blood sample evidence.

## V. CLOSING ARGUMENT

Appellant claims that the prosecution's closing argument was improper and that the trial court erred in overruling his objection thereto. Appellant, however, neither requested a cautionary instruction nor moved for a mistrial. Under settled law, a "timely motion for a mistrial or a cautionary instruction is required to preserve the issue [of a prosecutor's improper comments or conduct during closing argument] for appeal even if an objection was properly made to the conduct or comments and improperly overruled by the trial judge." Morris v. Commonwealth, 14 Va. App. 283, 287, 416 S.E.2d 462, 464 (1992) (en banc); see also Schmitt v. Commonwealth, 262 Va. 127, 148, 547 S.E.2d 186, 200-01 (2001). "There appears to be no exception in Virginia law to the strict application of this rule." Bennett v. Commonwealth, 29 Va. App. 261, 281, 511 S.E.2d 439, 448-49 (1999). This argument is therefore barred.

## VI. AFTER-DISCOVERED EVIDENCE

Appellant claims the trial court erred in not granting his motion for a new trial based on the post-conviction discovery that another witness had observed the handshake and appellant's proffer of her prospective testimony.

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

> Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983) (internal citations omitted). We find that appellant has failed to meet three of these criteria.

First, we cannot say that Johnson's testimony "could not have been secured for use at the trial in the exercise of reasonable diligence." Appellant contacted his attorney concerning the conduct for which he was convicted on December 7, 2006, almost eight months before his trial. The trial court could reasonably conclude that this was sufficient time to discover that Johnson, a local attorney with whom the appellant was previously acquainted, had evidence relevant to appellant's case. Indeed, appellant has given no explanation for the failure to discover this information, nor does he explain why it is unreasonable to conclude that through reasonable diligence he could have procured her testimony earlier. See McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (recognizing that appellant bears the burden of showing that the trial court's ruling "constituted reversible error"). Appellant therefore fails to persuade us that Johnson's evidence could not have been secured for use at trial.

Moreover, the information contained in the proffer is very general, and in its entirety can be regarded as cumulative, corroborative, or else collateral. Appellant proffered that Johnson

would testify that there was nothing "sinister" or "unusual" about the handshake and that the officer simply wiped off his hand and continued with his work "as though nothing had happened." No witness testified that the handshake was "sinister," therefore that portion of the proffer is inarguably redundant and cumulative. And while Deputy Roane did testify that it was "a little unusual" for a defendant to offer a handshake after his case was done and while the deputy was preparing for the next, and also testified that appellant's facial expressions during the handshake was "very unusual," Roane's testimony made clear that the handshake itself was not unusual. Accordingly, that portion of the proffered testimony is also cumulative.

Likewise, the proffered testimony that Deputy Roane wiped off his hand before returning to work "as though nothing had happened" can be regarded as mere corroboration of the testimony of the Commonwealth's witnesses. No witness testified that Deputy Roane did not continue his work after he cleaned his hand, and each account therefore seems consistent with that portion of the proffer. Moreover, the allegation that Deputy Roane did not show visible concern immediately following the handshake does not contradict or add to facts already in evidence. Deputy Roane testified that his contacts with appellant were initially "very casual" and that his unease was not "overwhelming" until later conversations, particularly when appellant stated that he should "go get checked out." It is not unreasonable to conclude that Deputy Roane, though "shocked and dismayed" by the blood, gave no immediate visible indication thereof.

Even where the proffer seems to contradict the factual evidence, that discrepancy can be explained by the proffer's failure to state Johnson's vantage point at the time of her observations. It is true that the proffer conflicts with the bailiff's testimony that Roane's facial expression was "like 'wow.'" However, the facts make clear that the bailiff was facing Roane, who was a witness before the general district court. It can reasonably be inferred that Johnson, who no

evidence suggests was involved in a current case before the general district court, was not able to see Roane's face at the time of her observations.

In any event, the proffer is not that Deputy Roane did not react to perceived blood from the handshake, or that the handshake did not occur. Instead, the proffer would show only that Roane's reaction was not apparent and that any discomfiture was—at least in Johnson's observation—temporary. There is nothing in the Commonwealth's case that we can say is clearly inconsistent with such evidence. And while the implication of the proffer regarding Deputy Roane's visible reaction immediately subsequent to the handshake may differ slightly from the testimony of the Commonwealth's witnesses, the trial court could reasonably determine that difference to be the result of Johnson's physical perspective, and therefore was collateral to the issues involved in this case.

Finally, it cannot be said that Johnson's proffered testimony is material and exculpatory such that it should produce opposite results at another trial. Even if the proffered testimony could be regarded as new information directly refuting facts already in evidence, the facts thus refuted are not essential to appellant's conviction. At best, the proffered evidence tends to show that the handshake was unremarkable and that Deputy Roane was not visibly anxious immediately after discovering the blood in his hand. Whatever the value of this testimony, nothing therein refutes the findings of the jury upon which conviction relies.

The trial court therefore did not abuse its discretion when it denied appellant's motion for a new trial.

## VII. CONCLUSIONS

For the reasons set forth above, we affirm the judgment of the trial court and appellant's conviction.

Affirmed.

- 15 -